**Ondrey E. GASPAR, a minor by Frank S. Gaspar et al.**

v.

**M. Rafik KASSM, Appellant,**

v.

**Dennis L. SMETZER, Third-Party-Defendant.**

**No. 73–1711.**

United States Court of Appeals, Third Circuit.

Submitted on briefs Jan. 25, 1974.

Decided March 19, 1974.

L. Carter Anderson, Rawle & Henderson, Philadelphia, Pa., for appellant.

Alan D. Williams, Jr., Williams & Glantz, Doylestown, Pa., Harry A. Kitey, Allentown, Pa., and Richard I. Moore, Durben & Moore, Morrisville, Pa., for appellees.

Before BIGGS, GIBBONS and GARTH, Circuit Judges.

OPINION OF THE COURT

BIGGS, Circuit Judge.

This is a diversity action seeking damages for bodily injury resulting from an automobile accident occurring in Pennsylvania on the afternoon of May 29, 1967. The defendant Kassm was operating his automobile and collided with a motor vehicle operated by Smetzer, who had as his passenger, Ondrey E. Gaspar, who was seriously injured. The complaint alleges that

41. *See* 10 Wright and Miller, Federal Practice and Procedure § 2712 (1973); Janek v. Celebrezze, 336 F.2d 828, 834 (3d Cir. 1964).

Kassm was negligent and that the collision was the result of his negligence. Smetzer was brought upon the record as a third party defendant by Kassm. At the time of the accident Kassm was employed as a teacher of accounting at Lafayette College; at the time of the trial he was supposed to be functioning on the faculty of Rensselaer Polytechnic Institute, at Troy, New York. There was a substantial verdict in favor of the plaintiffs against Kassm and the jury exonerated Smetzer.[1]

At some date not specified by the record but prior to Christmas 1972, the present cause of action appeared in the district court's "pool" preparatory to trial listing. Kassm was notified of the trial date. He, however, scheduled a holiday visit to Damascus, Syria, intending to return and take up his teaching at Rensselaer Institute on January 22, 1973. By a letter dated January 8, 1973 the court scheduled the case for trial on February 14, 1973. This allowed three weeks for preparation for trial after Kassm's scheduled return on January 22. Soon after January 22, counsel attempted to contact Kassm at his home in New York State and at Rensselaer Institute and was advised that Kassm had not re-turned on schedule due to illness. In fact the first word as to Kassm's illness was received by the Rensselaer Institute, which informed Kassm's counsel, and in some way counsel received the impression that at that time Kassm was suffering from a back injury and so wrote to Judge Newcomer requesting a postponement on February 2, 1973. Opposing counsel were informed also of the alleged unavailability of Kassm. On February 6, however, the trial judge stated by letter to Kassm's counsel, "The case will, of course, proceed as scheduled." On February 9, Kassm's counsel filed a formal motion for continuance. Supporting the motion was a telegram from Kassm's wife to the Rensselaer Polytechnic Institute stating that Kassm was seriously ill. A formal supplemental motion for continuance was filed on February 12. Annexed to this motion was a letter from Mrs. Kassm, dated February 4, confirming that Kassm was ill and that his return to normal activities would be delayed for three to six months. On February 13 the court denied these motions.

On February 14, 1973, the day set for trial, counsel renewed his motion for continuance and submitted a cable from Mrs. Kassm stating that Kassm "got

---

1. The appellant's brief states that "Prior to the commencement of the present action, Kassm was deposed in an earlier case which he brought against Smetzer in the State Courts of Bucks County to recover for his injuries in the same accident. In that case he was represented and opposed by different counsel than those engaged in the present action. He was questioned at the deposition by opposing counsel but not by his own; the deposition was a discovery proceeding, and clearly was not taken for the purpose of preserving Kassm's testimony for use at trial in lieu of his personal attendance." Brief of appellant at 3. This statement seemingly is not disputed.

The pretrial statement filed by the plaintiff states: "Stipulate between counsel to use the depositions of M. Rakif Kassm taken in the case of Kassm vs. Smetzer, No. 3936, May, 1967, Common Pleas, Bucks County, Pennsylvania, taken on 1/16/68."

Judge Newcomer states in his opinion in the case at bar, D.C., 60 F.R.D. 22 (1973), the following: "In lieu of the defendant's testimony, defense counsel read to the jury a transcript of the defendant's deposition taken in a prior action involving the same accident. That action was an arbitration proceeding in Bucks County, in which Kassm was the plaintiff and Dennis L. Smetzer was the defendant. In the Bucks County arbitration, Mr. Kassm was represented by personal counsel, rather than counsel for his insurer who represented him in this action."

Whatever this deposition was it was essentially the sole evidence presented by Kassm's counsel at his trial on the issue of liability.

There are other statements concerning a deposition in arbitration proceedings taken from Kassm. We are not informed as to the outcome of this proceeding but no assertion of *res adjudicata* or estoppel was made in the district court. In view of the disposition that we make of this case, viz., a remand and ordering of a new trial, we think it unnecessary to explore these matters further in this opinion.

nurves [sic] breakdown." The court in the absence of the jury called counsel to side bar and the following discussion took place.

"Mr. Anderson [counsel for Kassm]: If the Court please, on behalf of the defendant and third-party plaintiff, I have previously, on February 9, filed a motion for continuance and I supplemented that in writing to your Honor on the 10th.

"By way of a further supplement I will hand the Court at this time a copy of a telegram that I received and which I mentioned to your Honor by telephone. I would appreciate it if that could be incorporated as Exhibit E to my Motion for Continuance as evidence of the illness and disability of my client and his absence from the country.

"The Court: Very well. That will be done.

"Mr. Anderson: Do I understand that my motion is denied, your Honor?

"The Court: Yes, Mr. Anderson, your motion is denied and we have entered an order to that effect. Have you not received it as yet?

"Mr. Anderson: No, sir, I have not.

"The Court: Well, that was done yesterday or the day before and the motion was denied.

"Mr. Anderson: My motion as renewed at this time is also denied?

"The Court: Yes, your motion as renewed is further denied.

"Mr. Anderson: Thank you.

"The Court: Let me say, Mr. Anderson, in speaking to that motion and that ruling, the reason simply is that this case is an aged case and really has been on the dockets much too long as it is now. Your client was on long advance notice as to the date of trial of this case.

"Mr. Anderson: That is true, sir.

"The Court: And we only received notice of his inability to be present several days ago, as you well know, with a dearth of information bearing on the subject, which it seemed to the Court was not really appropriate for a matter of this consequence.

"In other words, if he couldn't be here for some legitimate reason it seemed to me he should have enough interest in the case that he would have given us at least some reason why he couldn't be here.

"Furthermore, his contacts in the States failed to furnish you or the Court with any reason. I am not in any sense criticizing counsel, but I am addressing this to the conduct of your client, and for this reason, plus the fact that the Court understands that there is a record from an arbitration or from a deposition, I believe, which was used in connection with an arbitration proceeding in Bucks County which sets forth the position of your client in this matter, and the Court therefore is of the impression that this case should proceed as scheduled.

"If it could not proceed today, incidentally, we are scheduled up throughout the balance of this spring into the summer and would not be able to hear this case until sometime after the summer.

"Is that correct, Mr. Reese?

"Mr. Reese: We couldn't hear it before June 26, your Honor.

"The Court: June 26.

"Mr. Reese: Twenty-seventh.

"Mr. Anderson: Just for the record, your Honor, may I state, as I have advised you by phone and counsel, that my client is in Damascus, Syria, which is his native country.

"He went there just before Christmas intending to return to this country on January 22nd and he knew of the scheduling of this case before he went, and I understand that he became ill while over there and I have confirmed that he has not returned to this country and is not returning to his employment, which he was sup-

posed to resume on January 22nd at Rensselaer Polytechnic Institute, where he is on the faculty.

"I would also point out, as I have mentioned, that the deposition that you allude to was taken in another proceeding and it was a deposition taken by adverse counsel of Mr. Kassm. Therefore, presumably, he was only answering the questions that he was asked and he was not being questioned by his own attorney, and that attorney, by the way, was not me, it was personal counsel that he had there. His insurance company was not involved in that proceeding and had no knowledge of it.

"However, I understand your Honor's ruling and am prepared to proceed except for the absence of my client.

"The Court: Very well.

"Mr. Anderson: We do have a problem regarding the use of the deposition. Mr. Moore [counsel for Smetzer] has objected to its use, and maybe this is not the appropriate time to consider that question, but since it relates to the subject that we are discussing I would bring it to your attention at this point.

"The Court: Very well. I think that it is perhaps appropriate that we consider it at this point. Mr. Moore, what is your objection to the use of it?

"Mr. Moore: Yes, sir. If I might address myself to the problem, it seems that the questioning involved with Mr. Kassm at the time, of course, was done by no counsel present in this proceeding, in which he was a plaintiff in the Bucks County action. This gives the original defendant the opportunity of a voice, so to speak, of testifying when but for that he would not be able to testify today.

"I can understand Mr. Anderson's position requesting his continuance. I take no position one way or the other as if it made any difference, but with respect to the deposition testimony itself, your Honor, I have no opportunity, not having conducted the deposition, having no counsel present at that deposition, really to rely on any effective cross examination either at the time or certainly now. I am totally precluded from cross-examining this witness, and in effect we have testimony read to the jury without the ability not only to see the deponent but the ability of counsel to cross-examine him, and I would object strenuously, your Honor, to that deposition.

"The Court: Very well. I understand your objection. Under the circumstances, however, I will have to overrule the objection.

"I do think in fairness that the defendant should be permitted to inform the jury the reason why his client isn't here, consistent with the very limited information which counsel has furnished to the Court.

"Mr. Anderson: I will advise the jury, then, that I understand—that my client is out of the country, he is ill, and he is unable to be present in this courtroom.

"The Court: Very well.

"Mr. Anderson: Thank you, sir.

"Mr. Williams: Your Honor, I have no objection if Mr. Anderson will amend that to 'It is my understanding that my client is out of the country and is ill and unable to attend.'

"None of us has any proof at all of this illness, sir.

"Mr. Anderson: I submit that I have evidence and it is of record.

"The Court: Very well. In that event I believe it is appropriate for the Court to instruct the jury, and I will say that it is the Court's understanding. I think that may solve both problems.

"Mr. Anderson: Thank you.

"The Court: Thank you. Would you bring the jury in."[2]

We note from the foregoing that the Judge's courtroom deputy indicated that perhaps the case could be tried on June 27th[3] by Judge Newcomer, and it is notable that opposing counsel did not argue against a continuance but took no position. The trial proceeded over the objections of Kassm's counsel and verdict and judgment in excess of $50,000 against Kassm and in favor of the plaintiff and a verdict and judgment in favor of Smetzer followed.

Counsel subsequently received a written report from Kassm's physician, Dr. Mohammad Nazir Bitar. This document dated February 15, 1973, as translated into English by an interpreter in Damascus on February 17, 1973, was placed in the record with an accompanying affidavit by counsel filed March 16, 1973. The report was addressed to Mrs. Kassm and in part reads as follows:

"Upon examining your husband Mr. Rafik Kassm, and after conducting the necessary laboratory analysis I found that he is suffering from a state of nervous breakdown.

"I propose that he should resort to complete rest, and you keep him away from everything which may disturb him or provok [sic.] his nerves. I also recommend the use of the medicines and prescribed to him with all care and discipline for a period not less than Six weeks. Should you notice any sudden negative changes, please do not hesitate to contact me by telephone or in person.

"I sincerely hope that Mr. Kassm shall be able to return to his ordinary and normal life within the next few months. Please do not hesitate to inform me if you need any help."

After the trial, a motion for a new trial was denied by the district court

with an opinion, 60 F.R.D. 22 (1973), and the appeal at bar followed.

An examination of the complaint, as we have indicated, shows that Kassm was charged with negligent driving and failure to observe the laws of Pennsylvania in respect to the operation of motor vehicles. These allegations were denied in Kassm's answer and as third party plaintiff he alleged negligence on the part of the third party defendant Smetzer, the other driver in the accident.

We think Kassm's case was gravely prejudiced by the fact that he was not present. Particularly, Gaspar and his witnesses testified that the accident was caused by Kassm's negligence in allowing his car to cross the road and strike Smetzer's car at or near a narrow bridge. One of Gaspar's witnesses, Chasar, the Chief of Police of the Pennsylvania township where the accident occurred, testified over objection that Kassm made damaging oral admissions at the scene of the accident, and these statements were not convincingly rebutted by the deposition taken in the Bucks County arbitration proceedings which was read to the jury in the case at bar. The defense asserted by Kassm to these admissions is not clear nor is the ground of the deposition's admission. However, in the view we take of the case it is not necessary to decide these difficult evidentiary questions. As we have said, Kassm's entire defense on the issue of liability consisted of reading to the jury the deposition taken in the Bucks County proceedings[4] and the persuasiveness of this evidence was obviously lessened by the apparent language difficulties and the fact that Kassm was questioned solely by opposing counsel.

The complaint in the case at bar was filed May 29, 1969. The trial com-

2. As to references to the deposition, see again note 1, *supra.*

3. It does not appear from the record when Kassm became available in the United States after his illness.

4. The precise date of the deposition does not appear from the record.

menced on February 14, 1973. There was indeed delay. An examination of the record indicates that little, if any, òf it was caused by the defendant, albeit it may be stated that he did not press for trial. We are aware, of course, of the crowded dockets of the United States District Court for the Eastern District of Pennsylvania and the heavy burdens placed upon the distinguished and hard-working judges of that court in their efforts to keep their dockets current, but nonetheless we are of the view that in this case the learned trial judged abused his discretion. The request for continuance made by Kassm was his first and only request for delay and his counsel acted diligently to inform the court and his opposing counsel of his request for delay. Moreover, we can perceive no affirmative evidence supporting the assertion of the plaintiffs that the request was not made in good faith. It must be conceded that the statement that the letters of Mrs. Kassm that her husband was suffering from a "nervous" condition is a vague diagnosis.[5,6] A better diagnosis and prognosis should have been obtained from a Damascene doctor, but both we and the court below can take judicial notice of the fact that communications between Philadelphia and Damascus in the year 1973 were neither prompt nor easy.

Moreover, we can see no pressing necessity for haste albeit we are aware of the annoyance caused to a trial judge when his carefully arranged trial calendar is disarranged, but we cannot let this obscure the fact that we deem the grounds upon which the distinguished district judge acted were insufficient. We do not consider the motion for continuance to be deficient on its face. It is customary to grant a continuance on the ground of illness of a party. We conclude that Kassm's testimony was necessary for the defense of his case, that the granting of a continuance would not have unduly prejudiced the other parties, and that the continuance motion was not motivated by procrastination, bad planning or bad faith on the part of Kassm or his counsel. It is the law that where none of the foregoing appear, the denial of a continuance for illness is abuse of discretion. Cornwell v. Cornwell, 73 App.D.C. 233, 118 F.2d 396 (1941); Harrah v. Morgenthau, 67 App.D.C. 119, 89 F.2d 863 (D.C.Cir., 1937), and Davis v. Operation Amigo, Inc., 378 F.2d 101 (10 Cir. 1967). Such is the case now before the court. *Cf.* Lehman v. United States, 313 F.Supp. 249 (E.D.Pa.1970).

Upon consideration of this record, we are constrained to reverse the judgment of the district court and will order a new trial.

5. The statement of Dr. Mohammad Nazir Bitar that Kassm was suffering from a nervous breakdown would not be deemed by internists in the United States to be sufficient, but we can take judicial notice, as could the court below, that the state of medicine in the Near East is not on a par with standards in the United States. However, since Dr. Bitar's statement was received after the decision of the learned district judge not to postpone the trial, we do not take it into consideration in rendering our decision.

6. The plaintiffs also rely upon Rule 7(b) of the Local Rules of Civil Procedure of the United States District Court for the Eastern District of Pennsylvania, which provides: "Except for witnesses called on rebuttal or surrebuttal, a witness neither (1) named in any pre-trial memorandum or supplements thereto of any party, nor (2) authorized by the court in order to prevent manifest injus-

tice, may not testify at the trial if timely objection is made by opposing counsel." This issue was not raised by the plaintiffs upon Kassm's motion for a new trial and therefore should not be available here. Assuming *arguendo* that this rule applies to parties to litigation, a proposition for which the plaintiffs cite no authority, it does not follow that Kassm's counsel would not have given notice of Kassm's intention to testify if he had been available. Further, Kassm's counsel apprised the parties of such an intention in his motion for continuance filed February 9 wherein he stated that the case could not be defended adequately without Kassm being present to testify and assist counsel.

It is notable that in the plaintiff's pretrial memorandum, filed August 4, 1971 (Paper #14), no mention is made of Gaspar as a witness.