In re Alfred J. LEONETTI, Jr. and Lois R. Leonetti, Debtors.

EARL REALTY, INC., Appellant,

v.

Alfred J. LEONETTI, Jr., Lois R. Leonetti, Brigantine Coast Realty, Inc. and Commercial Mortgage Co.

Bankruptcy No. 81-00772K.

Civ. A. No. 83-162.

United States District Court,
E.D. Pennsylvania,

March 8, 1983.

On Motion to Alter Order April 6, 1983.

Alison Douglas Knox, Philadelphia, Pa., for appellant.

Leonard Goldberger, Philadelphia, Pa., for Brigantine Coast Realty.

Gilbert Newman, Philadelphia, Pa., for Commercial Mortgage Co.

Edward J. DiDonato, Philadelphia, Pa., for trustee.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

In this action, the appellant, Earl Realty, Inc., ("Earl"), a creditor and holder of judgment liens against Alfred J. Leonetti, Jr. and Lois R. Leonetti ("Leonetti"), (debtors in Bankruptcy Action No. 81–00772K), filed a complaint in the bankruptcy court to subordinate a purchase-money mortgage lien held by defendant Commercial Mortgage Company ("Commercial Mortgage") as a secured claim upon the principal asset of the Leonetti estate in bankruptcy (a house in Brigantine, New Jersey). Specifically, Earl alleged that the mortgage underlying the lien was not obtained through normal arms-length business dealings but was a sham designed to provide Leonetti with needed cash on the eve of the bankruptcy while giving Commercial Mortgage secured creditor status and priority against any bankruptcy estate that might result.

A trial on this issue was held before the bankruptcy court on September 22 and 23, 1982. The bankruptcy judge ruled in favor of Commercial Mortgage and pursuant to Fed.R. Bankruptcy Procedure 741, which incorporates Fed.R.Civ.P. 41(b), dismissed Count II of Earl Realty's complaint and entered judgment in favor of Commercial Mortgage. The bankruptcy court's order was not accompanied by an opinion. In effect, the bankruptcy judge's order held that the mortgage obtained from Commercial Mortgage by Leonetti was in fact a valid purchase-money mortgage that was the product of arms-length dealings between Leonetti and Commercial Mortgage in that plaintiff had not carried its burden of persuasion to show otherwise. Both parties agree that the mortgage, if it is a legitimate purchase-money mortgage, takes priority over the unsecured judgment lien claims of Earl Realty in the distribution of the assets of the Leonetti estate in bankruptcy. Earl Realty subsequently filed a motion for reconsideration with the bankruptcy judge. When this motion was denied, Earl filed a notice of appeal requesting that this Court grant them a new trial due to alleged procedural errors committed at the trial. For the reasons hereinafter set forth, the Court will, pursuant to Interim Bankruptcy Rule 8004, exercise its discretion and decide Earl's appeal of the bankruptcy court's order as an interlocutory order, affirm the dismissal of Count II of Earl Realty's complaint, and direct that the parties and the bankruptcy court adhere to the stipulation of June 17, 1982 until the appeals in this matter are concluded.

In *Northern Pipeline Co. v. Marathon Pipeline Co.,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (*"Marathon"*), the United States Supreme Court held that the broad grant of jurisdiction to Article I bankruptcy judges contained in the Bankruptcy Reform Act of 1978 ("The 1978 Act") was unconstitutional insofar as it conferred upon the bankruptcy courts jurisdiction over cases that, in the absence of a bankruptcy petition, could have been brought in federal or state trial courts. The Supreme Court stayed its holding until October 4, 1982 and then extended the stay until December 24, 1982 in order to provide Congress an opportunity to amend the 1978 law. Congress did not act. On December 25, 1982, the *Marathon* holding took effect. To enable itself to continue to conduct bankruptcy proceedings, this Court, on December 21, 1982 adopted an Emergency Interim Bankruptcy Rule for the Administration of the Bankruptcy System. The Emergency Interim Rule became effective on December 25, 1982. The Rule provides that it shall remain in effect until "Congress enacts appropriate remedial legislation in response to the Supreme Court's decision in Northern Pipeline [*Marathon*] or until March 31, 1984, whichever first occurs".

**1006**

Regarding the continued activity of the bankruptcy court for the Eastern District in the wake of *Marathon,* the Emergency Interim Rule provides that "the bankruptcy court constituted by § 404 of Public Law 95–598 [the 1978 Act] shall continue to be known as the United States Bankruptcy Court for this district" and that "[a]ll cases under Title 11 and all civil proceedings under Title 11 or arising in or related to cases under Title 11 are referred to the bankruptcy judges of this district." The Emergency Interim Rule further provides:

> Courts of bankruptcy and procedure in bankruptcy shall continue to be governed by Title IV of Public Law 95–598 as amended and by the bankruptcy rules prescribed by the Supreme Court of the United States pursuant to 28 U.S.C. § 2075 and limited by SEC. 405(d) of the Act, to the extent that such Title and Rules are not inconsistent with the holding of *Northern Pipeline Co. v. Marathon Pipeline Co.,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).

The Emergency Interim Rule has been held to be a constitutional exercise of the judiciary's power to regulate the cases coming before it and has been held to be consistent with the *Marathon* decision. *See Prudential Insurance Company v. Stouffer Corporation,* 26 B.R. 1019 (D.C.E.D.Mich. 1983).

### The Facts of the Instant Case

Both defendants, Leonetti and Brigantine Coast Realty, Inc. ("Brigantine Coast"), filed petitions for Chapter 11 bankruptcy reorganization in 1981. (Leonetti is the debtor in Bankruptcy No. 81–00772K and Brigantine Coast is the debtor in Bankruptcy No. 81–00899K.) During the course of proceedings in bankruptcy court, the Leonetti bankruptcy was converted from Chapter 11 reorganization bankruptcy to Chapter 7 liquidation bankruptcy. Earl Realty is a creditor and holder of judgment liens against both Leonetti and against Brigantine Coast Realty. On November 12, 1981, Earl filed an amended complaint against the debtors. Count I of the complaint

sought to determine the dischargeability of the debts of Leonetti and Brigantine Coast pursuant to Section 523 of the 1978 Act (11 U.S.C. § 523). In particular, Count I alleged that Leonetti owed $484,138.62 to Earl, which is the assignee of a claim against Leonetti in that amount plus interest and costs. The judgment against Leonetti, originally held by Speer Brothers, Inc., resulted from a judgment entered against Leonetti in the Court of Common Pleas of Chester County upon counts of fraud, conversion and misappropriation of sums of money lent to Leonetti by Speer Brothers and for loss of value in the stock of Speer Brothers as a result of misappropriation and mismanagement of the corporation's affairs by Leonetti. Brigantine Coast is a corporation that is 99% owned by Leonetti. Earl alleges that they conducted the business of Brigantine Coast without regard to the corporate form and that Brigantine Coast is jointly liable for the aforesaid financial obligations of Leonetti. Thus, in Count I of its complaint filed in bankruptcy court, Earl Realty asked that the judgment debt to Speer Brothers, of which Earl is the assignee, be determined to be nondischargeable pursuant to Section 523(a)(2), (4), and (6) of the 1978 Act. (11 U.S.C. § 523).

Count I, however, is not before this court. It is the Court's understanding that Count I is in the process of being litigated before the bankruptcy court. By stipulation of the parties entered into on January 28, 1982, it was agreed that Count I and Count II of Earl Realty's complaint would be severed and that Count II would be tried first while Earl Realty filed a motion for summary judgment in connection with Count I. As heretofore noted, Earl Realty's allegations in Count II of the complaint were tried before the bankruptcy court in September, 1982. The bankruptcy judge found in favor of Commercial Mortgage and against Earl Realty. Earl moved for reconsideration. On October 27, 1982, the bankruptcy court affirmed its earlier decision by order without opinion. It is this decision on Count II of the complaint from which Earl Realty appeals, requesting a new trial on Count II

as a result of errors allegedly committed at the trial.

Specifically, in Count II of the complaint, Earl seeks to subordinate the purchase-money mortgage lien of defendant Commercial Mortgage as a secured claim upon the principal asset of the Leonetti estate in bankruptcy—so that the mortgage lien is not given priority over the judgment lien which Earl Realty holds as assignee of Speer Brothers in any distribution of the Leonetti estate that subsequently results pursuant to the liquidation and dischargeability provisions of Chapter 7 of the 1978 Act.

If Commercial Mortgage's mortgage lien is the result of a valid purchase-money mortgage, it will probably take priority over the lien held by Earl Realty in the disbursement of the assets of the Leonetti estate. However, if the mortgage is not a valid purchase-money mortgage, then the mortgage lien would probably not automatically take priority over the judgment lien held by Earl Realty. It is alleged by Earl Realty that the mortgage was not the result of normal, arms-length business dealings between the parties but resulted from the collusion of Leonetti and Mr. and Mrs. Cappelli, the parents of Mrs. Leonetti, and that Commercial Mortgage was or should have been aware that the mortgage only refinanced the house that was already effectively owned by Leonetti. If Earl Realty had carried its burden of proving that the purchase-money mortgage was the result of inequitable dealing, the distribution of the Leonetti estate in bankruptcy would be determined by the Bankruptcy Court in accordance with Section 726 of the 1978 Act (11 U.S.C. § 726). The probable result of such a disbursement procedure would be that Earl Realty would be entitled to some of the proceeds of any sale of the Leonetti home at 5111 Ocean Drive South in Brigantine. Apparently, the house is the only substantial asset of the debtors' estate (for both Leonetti and Brigantine Coast). The Commercial Mortgage lien is in the amount of $145,000.00. The house has been for sale since April, 1982 and no offers approaching that amount have been received. As heretofore noted, Earl also seeks in Count I to have its lien against Leonetti determined to be nondischargeable in bankruptcy because the judgment underlying the line involved fraud. If Earl prevails on this claim (contained in Count I of its complaint), it will be able to continue to pursue other creditors' remedies against Leonetti to the extent that its lien has not been satisfied by distribution of the debtors' estate. *See* 11 U.S.C. § 523; D. Epstein, *Debtor-Creditor Law* 232–48 (2nd Ed.1982).

### The Appealability of the Bankruptcy Court Ruling on Count II of Earl Realty's Complaint

Interim Bankruptcy Rules 8003 and 8004, adopted by the Eastern District Court, which continue to be applicable to this action by the terms of the Emergency Interim Rule, set forth the procedure for filing a notice of appeal of a bankruptcy court decision with the district court. Though the instant appeal is not one taken from a final order nor one entitled to review under the collateral order doctrine, the Court may undertake appellate review of an interlocutory bankruptcy appeal pursuant to the authority conferred by federal statute. Title 28, U.S.C. § 1334(b) provides in pertinent part:

> The district courts ... shall have jurisdiction of appeals from interlocutory orders and decress of bankruptcy courts, but only by leave of the district court to which the appeal is taken.

Rule 8004(d) of the Suggested Interim Bankruptcy Rules provides in pertinent part:

> (d) Appeal Improperly Taken Regarded as an Application for Leave to Appeal. If a timely notice of appeal is filed where the proper mode of proceeding is by an application for leave to appeal under this rule, the notice of appeal shall be deemed a timely and proper application for leave to appeal. The appellate court may enter an order either granting or denying leave to appeal or directing that an application for leave to appeal be filed. . . .

Pursuant to 8004(d), the Court will therefore deem the notice of appeal as a timely and proper application for leave to appeal.

■ While § 1334(b) requires leave of the district court to appeal, it does not describe the circumstances in which such leave should be granted. In the absence of any standards, it is appropriate to refer to the statutory standards governing interlocutory appeals from district courts to courts of appeals, 28 U.S.C. §§ 1291–1292. *See* 1 Collier on Bankruptcy (Collier) ¶ 3.03 (7)(d)(v) (15th edition 1982). A decision on the interlocutory appeal at this time, being in the interests of judicial economy, the Court will treat Earl Realty's notice of appeal as an application for leave to appeal and accept and decide Earl's appeal of the bankruptcy court's interlocutory order of October 27, 1982 concerning the merits of plaintiff's Count II claim.

### Plaintiff Earl Realty's Grounds for a New Trial

As heretofore noted, trial in this matter was held on September 22nd and 23rd, 1982. On September 22, two witnesses were examined and cross-examined, including John Howard, an employee of Commercial Mortgage. On September 23, the testimony of a third witness was entered into the record by stipulation. At this point, Earl Realty moved for a continuance of the trial in order to secure the appearance and testimony of Mr. Leonetti whom it had been unable to locate and serve with a subpoena. Mr. Howard had testified that he did not know and had no reason to know of the suspicious circumstances surrounding the Leonetti-Cappelli ownership and financing of 5111 Ocean Drive South and that Commercial Mortgage had issued a normal, valid, purchase-money mortgage to Leonetti as a result of arms-length business dealings. Earl Realty disputed this and noted that, in response to its request for admissions, Mr. Leonetti had admitted certain facts that were denied by Mr. Howard in his testimony. Thus, Earl Realty requested the continuance so that it might locate Mr. Leonetti and compel his appearance and testimony.

Earl also sought to make Mr. Leonetti's responses to its request for admission a part of the record so that his responses might be used to contradict Mr. Howard's testimony. The bankruptcy court denied both requests. Plaintiff Earl thereupon conceded that, absent the use of the admissions as evidence or the appearance of Mr. Leonetti, it could not carry its burden of persuasion to show the purchase-money mortgage lien of Commercial Mortgage to be invalid and subject to subordination. Thus, the bankruptcy court entered a judgment of dismissal of Earl's Count II claim pursuant to Fed.R. Bankruptcy P. 741 (which incorporates Fed. R.Civ.P. 41(b)).

Earl moved for reconsideration of the dismissal order, again requesting a continuance to obtain Mr. Leonetti's testimony and the introduction into evidence of his responses to the request for admission. Earl also at this juncture sought the admission into evidence of the deposition of Mrs. Leonetti. The bankruptcy court denied Earl's motion for reconsideration. On appeal, Earl contends that the bankruptcy court committed error by (1) refusing to grant the continuance; (2) refusing to admit Mr. Leonetti's responses to the request for admission into evidence; and (3) refusing to admit Mrs. Leonetti's deposition into evidence. For the reasons hereinafter set forth, the Court finds no error in the rulings of the bankruptcy court and will affirm the bankruptcy court's order denying the motion for reconsideration and will affirm the judgment of dismissal entered by the bankruptcy court.

■ Regarding the first alleged ground for error, the bankruptcy court's refusal to grant a continuance in the midst of trial, this Court can find no error in the ruling below. The decision to grant or deny a continuance is within the sound discretion of the trial court, whose determination should not be reversed absent a clear abuse of discretion. *See Lamb v. Globe Seaways, Inc.,* 516 F.2d 1352 (2d Cir.1975); *Krodel v. Houghtaling,* 468 F.2d 887 (4th Cir.), *cert. denied,* 414 U.S. 829, 94 S.Ct. 57, 38 L.Ed.2d 64 (1972); *Ruiz v. Hamburg-American Line,*

478 F.2d 29, 31 (9th Cir.1973). When the request for continuance is made in the midst of trial and the party requesting the continuance knew of the trial date and the problems to be encountered in locating and procuring the attendance of a witness, the trial court's denial of a continuance in the midst of trial can hardly be considered an abuse of discretion. *See Fairway Center Corp. v. U.I.P. Corp.,* 502 F.2d 1135 (8th Cir.1974); *Lehman v. United States,* 313 F.Supp. 249 (E.D.Pa.1970).

Counsel for Earl Realty was well aware that Mr. Leonetti was proving difficult to locate and serve with a subpoena. On two occasions, Earl had obtained bankruptcy court orders to aid them in attempting to produce Mr. Leonetti for deposition and trial. Since it had been unable to locate Mr. Leonetti prior to trial, Earl Realty should have sought a continuance of trial if it had determined that the testimony of Mr. Leonetti was essential to sustain Earl's burden of persuasion on the subordination claim. This Earl did not do. Instead, it elected to allow trial to proceed and then sought a continuance at an untimely juncture. The bankruptcy court was correct in denying the continuance under the circumstances presented by the discovery and trial history of this matter.

■ The bankruptcy court was also correct in refusing to admit into evidence Mr. Leonetti's responses to Earl Realty's request for admission. By the terms of Fed.R.Civ.P. 36, which is incorporated by Federal Bankruptcy Rule 736, "[a]ny matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission... Any admission made by a party under this rule is for the purpose of the pending action only and is not an admission by him for any other purpose nor may it be used against him in any other proceeding". Fed.R.Civ.P. 36(b). However, the admission of one party to an action is not binding upon a co-defendant. *United States v. Wheeler,* 161 F.Supp. 193, 198 (W.D.Ark. 1958). *See also Thorp Sales Corp. v. Dolese Brothers Co.,* 453 F.Supp. 196, 202 (W.D. Okl.1978).

■ Furthermore, a response to a request for an admission is more in the nature of a pleading than it is testimony. *See McSparran v. Hanigan,* 225 F.Supp. 628 (E.D.Pa.), *aff'd,* 356 F.2d 983 (3d Cir.1966). As Judge Freedman observed in *McSparran,*

> An answer to a request under Rule 36 is unlike a statement of fact by a witness made in the course of oral evidence at a trial, or in oral pre-trial depositions, or even in written answers to interrogatories... The purpose of the Rule is not the discovery of information but the elimination at trial of the need to prove factual matter which the adversary cannot fairly contest.

225 F.Supp. at 637. Professors Wright and Miller, who cited *McSparran* with approval, have noted that:

> Admissions obtained under Rule 36 may be offered in evidence at the trial of the action, but they are subject to all pertinent objections to admissibility that may be interposed at the trial... It is only when the admission is offered against the party who made it that it comes within the exception to the hearsay rule for admissions of a party opponent.

C. Wright and A. Miller, 8 *Federal Practice and Procedure* § 2264, at 741 (1970) (footnotes omitted).

In the instant case, Earl Realty attempted to offer the responses of Mr. Leonetti against Commercial Mortgage, rather than against Mr. Leonetti. Thus, the admissions were inadmissible hearsay. Under certain circumstances, it could be that responses to Rule 36 requests would be admissible against a co-defendant where the two defendants had an identity of interest. However, that is not the situation in this case. Mr. Leonetti's estate will be liquidated in bankruptcy no matter whether Commercial Mortgage or Earl Realty gleans the lion's share of the distribution of the estate. Therefore, Mr. Leonetti's admissions are not against his interest and they are not excepted from the hearsay rule pursuant to Fed.R.Evid. 801(d)(2). No other provision

of the hearsay rule permits Mr. Leonetti's admissions to be received in evidence. Furthermore, under the circumstances of this case, the Court can find no particular guarantee of trustworthiness in Mr. Leonetti's admissions since his estate will be liquidated whatever he says or does. The Court therefore will affirm this evidentiary ruling of the bankruptcy court.

▮ Earl Realty also contends that the bankruptcy court should have admitted into evidence Mrs. Leonetti's deposition. Earl made this request in a motion for reconsideration of the order of dismissal after the completion of trial. Plainly, Earl's motion to admit the deposition into evidence was untimely. Where an unsuccessful party has had ample opportunity to produce evidence at trial, but failed to do so, courts do not allow the unsuccessful party to relitigate the case by presenting evidence previously ignored. *See Bell Telephone Laboratories, Inc. v. Hughes Aircraft Co.,* 73 F.R.D. 16 (D.Del.1976); *Muhammad Temple of Islam v. City of Shreveport,* 387 F.Supp. 1129, 1137 (W.D.La.1974). The bankruptcy judge was correct in refusing to re-open the proceeding to consider the admissibility of Mrs. Leonetti's deposition after completion of the trial. This Court will affirm the bankruptcy court's ruling.

▮ Earl has also contended that it should be accorded a new trial for the generalized purpose of procuring the testimony of additional witnesses. Rule 59 of the Federal Rules of Civil Procedure, which is incorporated by Federal Bankruptcy Rule 923, provides for a grant of new trial where there has been (1) manifest error of law; (2) manifest error of fact; or (3) newly discovered evidence. *See Brown v. Wright,* 588 F.2d 708, 710 (9th Cir.1978); *In re Devault Manufacturing Co.,* 4 B.R. 382, 385 (Bkrtcy.E.D.Pa.1980). Earl has not established nor even contended that the additional testimony it seeks to produce constitutes "newly discovered evidence". Absent such a showing, an unsuccessful litigant may not obtain a new trial merely to produce evidence it neglected to bring forth at the trial. *Brown v. Wright, supra,* 588 F.2d at

710. Furthermore, a party that seeks to submit newly discovered evidence must also show that the evidence discovered is of such a nature that it would probably change the outcome of the previous trial and that this evidence could not have been discovered earlier by proper diligence. *See English v. Mattson,* 214 F.2d 406 (5th Cir.1954); *Ionian Shipping Co. v. Tyson Shipping Co.,* 49 F.R.D. 334, 337 (S.D.N.Y.1969). Earl has made no such showing in this matter. Thus, the bankruptcy court was correct in denying a new trial to Earl Realty for this purpose. This Court will therefore affirm this ruling of the bankruptcy court.

For the aforesaid reasons, the orders of the bankruptcy court dismissing Count II of plaintiff's complaint pursuant to Federal Bankruptcy Rule 741 will be affirmed.

### The Stipulation of June 17, 1982

On June 17, 1982, the parties entered into a stipulation which was approved by the bankruptcy court, designed to preserve the financial interests of the parties until Earl Realty's subordination claim was terminated by the courts. Specifically, the stipulation provided:

> all parties to Adversary No. 81–1231 agree that the Debtors' property at 5111 Ocean Drive South, Brigantine, New Jersey, should be sold and the net proceeds held in escrow by Trustee John P. Judge pending resolution of the issues at suit;"

Stipulation of June 17, 1982 at 1. The stipulation further provided that a realtor should be retained to sell the property "upon such terms and conditions and at a sale price acceptable to the parties" and also made the giving of notice and a hearing to all creditors a condition of sale. The stipulation further provided that the proceeds of any sale of the house would be held in an interest-bearing escrow account approved by the bankruptcy court and that no distribution of the sale funds would be made without prior order of the court (stipulation of June 17, 1982 at 2–3).

Subsequent to the bankruptcy court's order of dismissal pursuant to Rule 41(b), Earl Realty applied to the bankruptcy court for

enforcement of the stipulation so that Earl's financial interests would be protected pursuant to the stipulation during the course of the instant appeal and any further appeals. The bankruptcy court has declined to enter an order enforcing said stipulation or declaring the continued vitality of the stipulation, apparently believing that the stipulation no longer has force in light of the bankruptcy court's dismissal.

■ A stipulation is a contract between the parties. Normally, the meaning of contractual terms is a question of the intent of the parties. Where, however, as here, the language of a stipulation is clear and unambiguous, a court may order its enforcement. The stipulation of June 17, 1982 specifically provides for the sale and escrow account retention of the sale proceeds "pending resolution of the issue at suit." Generally, litigation is not considered a final resolution of the issues at suit until appeals have been completed or the time for appeal has expired. The stipulation of June 17, 1982 remains enforceable until appeals are completed or the time for appeal has expired. The Court will order that this be done by the bankruptcy court.

Furthermore, continued enforcement of the June 17 stipulation will not prejudice any party to this litigation since the stipulation seeks only to obtain the liquidated value of the 5111 Ocean Drive South property and to preserve these funds, with interest, until the rights of the litigants are finally judicially determined. An appropriate order will be accordingly entered.

## ON MOTION TO ALTER ORDER

On March 8, 1983, this Court entered an Order affirming the bankruptcy court's dismissal of Count II of plaintiff Earl Realty, Inc.'s ("Earl Realty") complaint in bankruptcy against Commercial Mortgage Company ("Commercial Mortgage") and enforcing the parties' Stipulation of June 17, 1982 as requested by Earl. Earl Realty has now filed a motion asking this Court to alter that portion of its March 8 Order which is unfavorable to Earl. For the reasons hereinafter set forth, the Court will not change its March 8 Order.

In its appeal from the bankruptcy court, Earl Realty had argued that the bankruptcy court had erred in several procedural rulings made during the trial of this matter held in September, 1982. Earl Realty's counsel admitted before the bankruptcy court that the evidence it presented at the September trial, limited in part by the bankruptcy court's rulings, was not sufficient to carry its burden of persuasion in seeking to prevail on its claim against Commercial Mortgage. In Count II of its complaint in bankruptcy, Earl had sought to subordinate Commercial's purchase money mortgage lien against the debtor's estate to Earl's own judgment lien against the estate. To do this, Earl Realty would have been required to show, by a preponderance of the evidence, that the purchase money lien was not the result of a valid purchase money mortgage. *See* 11 U.S.C. § 510.

In its motion and supporting memorandum, Earl Realty has argued that this Court made an error in law in not reversing the bankruptcy court's denial of Earl's request for a continuance during the midst of trial. The facts surrounding the trial request for continuance are more fully described in the Court's memorandum of March 8, 1983. Earl has in effect asked this Court to reconsider its ruling. The rehearing motion, provided for in Bankruptcy Rule 812, which incorporates Fed.R.App.P. 40, is so termed because the district court sits as a court of appeals in reviewing the orders of the bankruptcy court. Appellate Rule 40(a) provides that "If a petition for rehearing is granted the court may make a final disposition of the cause without reargument or may restore it to the calendar for reargument or resubmission or may make such other orders as are deemed appropriate under the circumstances of the particular case." In this case, Earl Realty's motion for rehearing is analogous to a motion for reconsideration filed in response to district court rulings.

The basis of Earl Realty's rehearing motion is its contention that this Court should have reversed the bankruptcy court's deci-

**1012**

sion not to grant Earl a continuance of trial for the purpose of locating Alfred Leonetti, the debtor and a witness whose trial testimony could admittedly have been important. As heretofore noted, Earl made this request for continuance during the trial, after one day of testimony had already taken place, in the two-day trial. Furthermore, Earl was very much aware of the difficulties of locating Mr. Leonetti well before trial and did not request a continuance prior to trial. Earl was so well aware of Mr. Leonetti's elusiveness that it had obtained two bankruptcy court Orders ordering him to appear for deposition. Earl had already deposed Leonetti but wishes to seek further information from him in connection with the Commercial Mortgage transaction.

As support for its motion, Earl Realty cites *Gaspar v. Kassm*, 493 F.2d 964 (3d Cir.1974), in which the Third Circuit reversed the district court for refusing to grant a continuance requested by defense counsel when defendant was unavailable for trial and was prejudiced by not being able to attend trial and testify. The continuance request in *Gaspar* was made prior to the beginning of trial.

The Third Circuit observed that

It is customary to grant a continuance *on the ground of illness of a party*. We conclude that Kassm's testimony was necessary for the defense of his case, that the granting of a continuance would not have unduly prejudiced the other parties, and that the continuance motion was not motivated by procrastination, bad planning, or bad faith on the part of Kassm or his counsel. It is the law that where none of the foregoing appear, the denial of a continuance for illness is abuse of discretion. (emphasis added).

493 F.2d at 969 (citations omitted). The Court also noted that "The request made by Kassm was his first and only request for delay and his counsel acted diligently to inform the court and his opposing counsel of his request for delay." (493 F.2d at 969).

Thus, the facts of *Gaspar v. Kassm* are readily distinguishable from those of the instant litigation. Here, Earl Realty's counsel was aware of the problem of locating Leonetti but, as a result of bad planning, proceeded to trial and then asked for a continuance when Leonetti did not appear at trial. *See* Memorandum of March 8, 1983 at ——. Furthermore, since this matter involved the absence of a prospective witness rather than the illness and unavailability of a party, *Gaspar v. Kassm* is not applicable.

The Court will enter an Order affirming this Court's Order of March 8, 1983.