116 F.3d 1486
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Kirk LUNDQUIST; Mark A. Robertson, Plaintiffs-Appellees,
v.
UNITED STATES of America, Defendant-Appellant.
Kirk LUNDQUIST, Plaintiff-Appellant,
and
Mark A. ROBERTSON, Plaintiff,
v.
UNITED STATES of America; U.S. Coast Guard, Defendants-Appellees.
 No. 96-35219.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 2, 1997.
Decided June 27, 1997.
 
 Appeal from the United States District Court for the Western District of Washington, No. CV-93-05393-FDB; Franklin D. Burgess, District Judge, Presiding.
 Before: WRIGHT, PREGERSON and THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Kirk Lundquist and Mark Robertson were injured when Robertson's boat allided with Channel Marker No. 5, a lighted aid to navigation maintained by the Coast Guard. Lundquist and Robertson sued the government under the common law of admiralty, arguing that the Coast Guard was negligent in its maintenance of the channel marker, and that its negligence was the proximate cause of a malfunction in the channel marker's light at the time of the allision. After a bench trial, the district court found the government negligent, and Robertson and Lundquist contributorily negligent. The government appeals, and Lundquist cross-appeals. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.
 
 I. Evidentiary Rulings
 
 3
 A. Expert Testimony of Lundquist's Electrical Expert
 
 
 4
 The government argues that the district court erred in failing to exclude the testimony of Lundquist's electrical expert, John Munroe. According to the government, Munroe's testimony should have been excluded for three reasons: (1) Lundquist failed to provide Munroe's name to the government in a timely fashion, in violation of Rule 26(a)(2)(A) of the Federal Rules of Civil Procedure; (2) Lundquist refused to allow the government to depose Munroe, in violation of Rule 26(b)(4)(A); and (3) Munroe failed to disclose the opinions he expressed during trial in his pretrial discovery report, as required by Rule 26(a)(2)(B).
 
 
 5
 The district court did not abuse its discretion when it failed to sanction Lundquist pursuant to Rule 26(a)(2)(A). The court extended the discovery period for the disclosure of both parties' experts' identities so that the government would not be prejudiced by Lundquist's late disclosure of Munroe's name. See Fed.R.Civ.P. 37(c)(1) (requiring imposition of sanctions for violations of Rule 26(a) only when the violation is not harmless).
 
 
 6
 Moreover, assuming that the government may appeal the issue even though it did not move for sanctions before the district court, the court did not abuse its discretion in failing to exclude Munroe's testimony for Lundquist's violation of Rule 26(b)(4)(A). The government was not prejudiced by its inability to depose Munroe. Not only did the government's electrical expert, Jon Grassen, testify ably about Munroe's opinions, but Munroe's pretrial report predicted the general scope of his trial testimony.
 
 
 7
 Last, the district court did not abuse its discretion when it failed to sanction Lundquist pursuant to Rules 26(a)(2)(B) and 37(c). Munroe's pretrial report did not contain a detailed outline of his trial opinions. However, Munroe did point out that one possible source of the channel marker's failure was the connection in parallel (instead of in series) of the marker's three batteries. Munroe also noted that the load voltage of the battery panel after the Coast Guard serviced the channel marker was only 12.6 volts.
 
 
 8
 Further, during trial, government counsel conceded that Grassen had prepared and "sent him stuff" on the issue of whether the Coast Guard connected one old battery to two new batteries when it last serviced the channel marker. Our reading of Grassen's testimony indicates that he was able to capably and meaningfully discuss the old battery issue. We conclude the government was not prejudicially deprived of notice of the substance of Munroe's testimony, and reversal is not warranted. See Sylla-Sawdon v. Uniroyal Goodrich Tire Co., 47 F.3d 277, 284 (8th Cir.), cert. denied, 116 S.Ct. 84 (1995).
 
 B. Adverse Inference
 
 9
 The government argues that the district court erred in drawing an adverse inference from the Coast Guard's failure to retrieve the channel marker's batteries, as well as its destruction of the light assembly after the allision. "Generally, a trier of fact may draw an adverse inference from the destruction of evidence relevant to a case." Akiona v. United States, 938 F.2d 158, 161 (9th Cir.1991). To draw an adverse inference from the destruction of evidence, it should appear that "the evidence would have been relevant to an issue at trial and otherwise would naturally have been introduced into evidence." Vodusek v. Bayliner Marine Corp., 71 F.3d 148, 156 (4th Cir.1995).
 
 
 10
 The district court did not abuse its discretion in drawing an adverse inference from the Coast Guard's destruction of the light assembly. Even though litigation had not yet commenced when the petty officer discarded the broken light assembly, the Coast Guard team that replaced the assembly was aware of the accident, and could have anticipated that litigation might ensue. See Blinzler v. Marriott Int'l Inc., 81 F.3d 1148, 1159 (1st Cir.1996). Despite the fact that the district court ultimately found that the light malfunctioned due to a faulty battery, the light assembly could have helped the court determine the cause of the allision.
 
 
 11
 In contrast, we believe the district court erred in drawing an adverse inference from the Coast Guard's failure to retrieve the channel marker's batteries, which were jettisoned into Budd Inlet by the force of the allision. Although the Coast Guard may have been better equipped to retrieve the batteries, the batteries were not under the Coast Guard's control once they were ejected into Budd Inlet. The Coast Guard neither destroyed the batteries nor was responsible for their loss. See Blinzler, 81 F.3d at 1159 (destruction of evidence); Vodusek, 71 F.3d at 156 (same).
 
 
 12
 This error, however, was harmless. Based on both the expert testimony of Munroe and the observations of four witnesses, the district court found that the channel marker was working intermittently at the time of the accident. Even without the benefit of the adverse inference, substantial evidence supports the district court's finding that a faulty battery, utilized by the Coast Guard in maintaining the channel marker light, led to the light's failure.
 
 II. Discovery
 
 13
 A. Failure to Respond to Requests for Admissions
 
 
 14
 During discovery, Robertson failed to respond to the government's request for the admission of several facts. Before trial, Lundquist and Robertson stipulated to the authenticity and admissibility of the facts contained in the unanswered request for admissions. During trial, the district court admitted the requests for admissions into evidence pursuant to Rule 36 of the Federal Rules of Civil Procedure.[1]
 
 
 15
 After the district court completed the liability phase of the trial, Lundquist submitted a motion to the district court, in which he argued: (1) the court should withdraw the admissions made by Robertson, and (2) if not, Robertson's admissions should not be held against Lundquist. The district court indicated that it would stand by it previous rulings. Lundquist now raises the same two arguments on appeal.
 
 
 16
 Two requirements must be met before an admission may be withdrawn: (1) "upholding the admissions would practically eliminate any presentation of the merits of the case," and (2) "the party who obtained the admission must not be prejudiced by the withdrawal." Id. Assuming that Lundquist has standing to argue that Robertson's admissions should be withdrawn,[2] neither of the two requirements was satisfied in the present case.
 
 
 17
 First, the admissions were not crucial to the government's case. The only two admissions which Lundquist quarrels with are the blood alcohol level of Robertson (.10 gm/dl), and the speed of Robertson's boat before the allision (approximately 30 miles per hour). While on the stand, Robertson testified that he was motoring the boat at 35 miles per hour. And, both Lundquist and Robertson testified to the amount of beer Robertson drank before driving his boat home. From this testimony, the district court could have found that Robertson was both intoxicated, and driving his boat at 35 miles per hour when he allided with the channel marker.
 
 
 18
 Second, the government would have been prejudiced if the district court had granted Lundquist's motion to withdraw. Lundquist only moved to withdraw the admissions after the completion of the liability phase of the trial. If the district court had granted Lundquist's motion to withdraw, the government would not have been prepared or able to present evidence to bolster the facts in the admissions. See Hadley, 45 F.3d at 1348; see also 999 v. C.I.T. Corp., 776 F.2d 866, 869 (9th Cir.1985); Farr Man & Co., Inc. v. M/V ROZITA, 903 F.2d 871 (1st Cir.1990).
 
 
 19
 Lundquist next argues that, even if the district court did not err in refusing to withdraw Robertson's admissions, those admissions should not have been used against Lundquist. We agree with the general rule that one party's admissions ordinarily may not be used against a co-party. See Becerra v. Asher, 105 F.3d 1042, 1047 (5th Cir.1997) ("[d]eemed admissions by a party opponent cannot be used against a co-party."); Riberglass, Inc. v. Techni-Glass Indus., Inc., 811 F.2d 565, 566 (11th Cir.1987).
 
 
 20
 However, because the basis for the rule is evidentiary, a co-party must object in order to prevent the admissions of another party from being used against the co-party. See Wright, Miller & Marcus, 8A Federal Practice & Procedure, § 2264, at 571-72 (1994) (observing that "[a]dmissions obtained under Rule 36 are subject to all pertinent objections to admissibility that may be interposed at the trial [and] ... [i]t is only when the admission is offered against the party who made it that it comes within the exception to the hearsay rule for admissions of a party opponent."); see also In re Leonetti, 28 B.R. 1003, 1009 (E.D.Pa.1983) (citing Wright & Miller with approval); Alipour v. State Auto. Mut. Ins. Co., 131 F.R.D. 213, 215 (N.D.Ga.1990) (same); Kittrick v. GAF Corp., 125 F.R.D. 103, 106 (M.D.Pa.1989) (same).
 
 
 21
 Not only did Lundquist fail to object to the admissibility of Robertson's admissions on hearsay grounds, but he affirmatively stipulated to the admissibility of those admissions.[3] We therefore conclude the district court did not abuse its discretion in using Robertson's admissions against Lundquist.
 
 III. Negligence
 A. Lundquist
 
 22
 Lundquist argues the district court clearly erred in finding him contributorily negligent. We disagree. Lundquist had a duty to act as an ordinarily prudent person would have acted in the circumstances. Lundquist knew that Robertson had been drinking all day, and he knew that it was nighttime, when additional skill would have been required to navigate the boat. The district court did not clearly err in finding that Lundquist was negligent in accompanying Robertson as a passenger on his boat in these circumstances. See Andrews v. United States, 801 F.2d 644, 650 (3d Cir.1986) (analogizing duty of passenger on boat to duty of passenger in automobile); Moreno v. Mercier, 275 Ill.App.3d 884, 889 (1995) (under Illinois law, passenger may be negligent if she is aware of a driver's intoxication "and proceeds to drive with him regardless."); Amrine v. Murray, 626 P.2d 24, 29 (1981) (under Washington law, "[t]he rule holding a passenger contributorily negligent in willingly continuing to ride with an intoxicated driver has no application unless something in the driver's conduct betrays his being under the influence."); Gonzalez v. Garcia, 75 Cal.App.3d 874, 880 (1977) (under California law, passenger was contributorily negligent when he knew that driver was intoxicated, but still chose to ride with driver); Trotter v. McKellip, 265 Or. 334, 336-37 (1973) (under Oregon law, "a person voluntarily who rides in a car driven by one whom he knows, or in the exercise of due care should know, is under the influence of intoxicating liquor to the extent that it impairs his ability to drive safely is guilty of contributory negligence."); Gates v. McKay, 181 So.2d 740 (1966) (under Florida law, passenger may be negligent if it was noticeable that driver of automobile was intoxicated, but still decided to ride in driver's car).[4]
 
 B. The Coast Guard
 
 23
 The government argues that the district court clearly erred in finding that the Coast Guard was negligent in its maintenance of the channel marker because: (1) the Coast Guard did not know that the channel marker was not functioning properly, (2) no witnesses other than Robertson and Lundquist observed the light not to be functioning on the night of the accident, (3) the government should benefit from the presumption created whenever a moving object strikes a stationary object at sea.
 
 
 24
 There are gaps in all three of the government's arguments. First, the district court could have found the Coast Guard negligent even if it the Coast Guard did not actually know of the channel marker light's malfunction. If, in the exercise of due care, the Coast Guard should have installed three new batteries, and should have known of the malfunction, the district court did not clearly err in finding the Coast Guard negligent.
 
 
 25
 Second, the district court based its finding that the channel marker was not lit at the time of the allision not only on the testimony of Robertson and Lundquist, but on the testimony of four witnesses who stated that the marker was unlit intermittently for days before the allision.[5]
 
 
 26
 Third, the presumption created against a moving ship when the ship "collides with a stationary object," Wardell v. Dept. of Transportation, 884 F.2d 510, 512 (9th Cir.1989), may be rebutted by showing "either that the collision was the fault of the stationary object ... or that the collision was an unavoidable accident." Id. at 513. In the present case, the collision was in part the fault of the channel marker (because it was not lit), and possibly unavoidable (because Robertson could not navigate around something he did not see). Therefore, the presumption does not help the government avoid liability.
 
 IV. Fault
 
 27
 A. Lundquist's Liability for Robertson's Injuries
 
 
 28
 The government argues that the district court clearly erred in finding that Lundquist was not at fault for Robertson's injuries. We disagree. Because Lundquist's negligence consisted of riding in a boat at nighttime with the intoxicated Robertson, Lundquist's negligence did not proximately cause Robertson's injuries.
 
 
 29
 B. Allocation of Comparative Fault Percentages
 
 
 30
 Both Lundquist and the government quarrel with the district court's apportionment of fault. "[W]hen two or more parties have contributed by their fault to cause property damage in a maritime collision or stranding, liability for such damage is to be allocated among the parties proportionately to the comparative degree of their fault, and that liability for such damages is to be allocated equally only when the parties are equally at fault or when it is not possible fairly to measure the comparative degree of their fault."[6] United States v. Reliable Transfer Co., 421 U.S. 397, 411 (1975).
 
 
 31
 As to Robertson's claim, the district court found Robertson to be 49% at fault, and the Coast Guard, 51% at fault. The court correctly found both Robertson's and the Coast Guard's negligence to be proximate causes of Robertson's injuries, and we cannot say it erred in determining the percentages of fault between these two parties to be almost equal.
 
 
 32
 As to Lundquist's claim, the district court found Lundquist to be 10% at fault, Robertson to be 35% at fault, and the Coast Guard to be 55% at fault. This allocation of fault is supported by the record. Although the district court computed the percentages of fault of Robertson and the Coast Guard differently in Lundquist's case than in Robertson's case, the court did not clearly err in doing so. With regard to Lundquist's claim, the court was required to allocate fault among three parties, instead of two, and to apportion fault with reference to Lundquist's claim. We cannot say the district court erred in apportioning fault among all three parties in the manner it did in resolving Lundquist's claim against Robertson and the Coast Guard.
 
 V. Application of the McDermott Rule
 
 33
 Lundquist argues the district court erred in refusing to create an exception to the McDermott rule of proportionate liability. The rule announced by the Supreme Court in McDermott, Inc. v. AmClyde, 114 S.Ct. 1461 (1994), applies when a plaintiff injured by two or more defendants settles with one of them, but proceeds to trial against the others. In such a case, the liability of the non-settling defendants is calculated in reference to the factfinder's allocation of proportionate liability. Id. at 1470; see also Boca Grande Club, Inc. v. Florida Power & Light Co., 114 S.Ct. 1472 (1994).
 
 
 34
 Lundquist argues that, because he knew that Robertson was insolvent when he settled with him, he should benefit from the joint and several liability rule even though he did not go to trial against Robertson. Even assuming Lundquist may raise his McDermott argument on appeal, his argument fails as a matter of law.
 
 
 35
 The Court in McDermott did not create an exception for a plaintiff who settles with an insolvent joint tortfeasor. Quite to the contrary, the Court clarified that, when a plaintiff chooses to settle with one joint tortfeasor, the plaintiff's recovery is limited only by the plaintiff's own choice to settle. Id. The Court observed that, if the plaintiff chooses to settle for less than the amount of a particular tortfeasor's liability, as in the present case, "[t]here is no reason to allocate any shortfall to the other defendants, who were not parties to the settlement." Id. at 1471-72.
 
 
 36
 Lundquist's argument is also inconsistent with the reasoning behind McDermott. When he settled with Robertson, Lundquist knew that, under the joint and several liability rule in admiralty, he could sue both Robertson and the Coast Guard, and hold the Coast Guard liable for the entire amount. Nevertheless, Lundquist chose to settle. By doing so he eliminated the risks associated with litigation and obtained money to finance his litigation against the Coast Guard. See id. at 1467. After benefiting from his settlement with Robertson, Lundquist is precluded by the McDermott Rule from obtaining from the Coast Guard the amount he could have been awarded against Robertson had he not settled with Robertson prior to trial. Exempting Lundquist from the McDermott Rule would contravene the spirit of McDermott and create a strong disincentive for the settlement of cases before trial.
 
 
 37
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Rule 36 provides: "if a party fails to answer a request for admissions within 30 days, the requested items are deemed admitted."
 
 
 [2]
 We also assume that Lundquist's post-trial motion was a motion to withdraw, even though Lundquist did not characterize it as such. See Hadley v. United States, 45 F.3d 1345, 1348 (9th Cir.1995) (observing that any matter admitted as per Rule 36 is admitted "unless the court on motion permits withdrawal or amendment")
 
 
 [3]
 Lundquist did make one objection at the time the admissions were introduced into evidence: that the government did not prove that Robertson received service of process of the request for admissions. However, "a party fails to preserve an evidentiary issue for appeal not only by failing to make a specific objection but also by making the wrong specific objection." United States v. Gomez-Norena, 908 F.2d 497, 500 (9th Cir.1990); see also United States v. Jamerson, 549 F.2d 1263, 1266-67 (9th Cir.1977)
 
 
 [4]
 Some of these state law cases were decided before the states cited switched over to a comparative negligence standard. See DeSole v. United States, 947 F.2d 1169, 1175 (4th Cir.1991) (observing that, as of 1986, "all but six states and the District of Columbia had switched to a comparative negligence standard."). However, the switch did not affect an automobile passenger's duty, but rather, signalled the swallowing of contributory negligence by comparative negligence
 
 
 [5]
 The government also challenges the following finding of fact:
 
 
 [23]
 On the night of the accident, Mr. Barnhouse noticed that the marker was not lit
 In fact, Mr. Barnhouse testified that the light was out the night before the allision, not the night of the allision. Although the district court's finding was erroneous, the error was harmless. See Fed.R.Civ.P. 61. Even without the testimony of Barnhouse, the district court had the testimony of three other witnesses who testified that the light was out near the time of the accident. The court also had the testimony of Munroe. From this testimony, the district court could easily have found that the light was intermittently operational, and not operational at the time of the allision.
 
 
 [6]
 While the wording of Reliable Transfer refers only to "property damage," we believe the holding of Reliable Transfer extends to personal injury resulting from a maritime collision. See LoVuolo v. Gunning, 925 F.2d 22, 28 (1st Cir.1991) (holding that the proportionate fault rule of Reliable Transfer "encompasses damages for personal injury and death as well as for property."). Applying Reliable Transfer 's rule to personal injuries arising out of maritime collisions is consistent with the policy behind Reliable Transfer: "to achieve a fair assessment of damages against each party according to their degrees [of] fault and to deter harmful conduct of vessels." Joia v. Jo-Ja Service Corp., 817 F.2d 908, 917 (1st Cir.1987). Further, admiralty courts have long employed the doctrine of comparative negligence. See Lewis v. Timco, Inc., 716 F.2d 1425, 1427-28 (5th Cir.1983) (observing that comparative negligence rule is applied in context of strict liability actions for unseaworthiness, personal injury suits under the Jones Act, actions under the Death on the High Seas Act, and suits under the Longshoreman's and Harbor Workers' Compensation Act)