**UNITED STATES of America and The State of New York, Plaintiffs– Appellees,**

**Town of Moreau, New York, General Electric Company and United States Environmental Protection Agency, Defendants–Appellees,**

v.

**GLENS FALLS NEWSPAPERS, INC. d/b/a The Post Star and Brendan Lyons, Intervenors–Appellants.**

No. 90, Docket 97–6262.

United States Court of Appeals, Second Circuit.

Argued Sept. 17, 1998.

Decided Oct. 27, 1998.

Thomas F. Gleason, Albany, NY, (Gleason, Dunn, Walsh & O'Shea of counsel), for intervenors-appellants.

J. Jared Snyder, Asst. Attorney General of New York, Albany, NY, (Peter H. Schiff, Deputy Atty. General, Dennis C. Vacco, Attorney General, of Counsel), for plaintiff-appellee State of New York.

Lewis B. Oliver, Jr., Albany, NY, (Mark A. Edwards, of Counsel), for defendant-appellee Town of Moreau, NY.

Michael Elder, Albany, NY, for defendant-appellee General Electric Company.

Before: KEARSE, Circuit Judge, BRIEANT and JOHNSON, District Judges.[1]

BRIEANT, District Judge.

Proposed Intervenors Glens Falls Newspapers, Inc. d/b/a/ The Post Star and Mr. Brendan Lyons, a reporter (together "the Post Star"), appeal from an Order of the United States District Court for the Northern District of New York (Lawrence E. Kahn, District Judge) filed September 18, 1997, as amended by Order filed September 25, 1997, in this CERCLA (the Comprehensive Environmental Response, Compensation, & Liability Act, 42 U.S.C. §§ 9601 *et seq.*) litigation, which denied on the ground of futility, a motion by the Post Star to intervene so that it could move to vacate a consent protective order (the "Consent Order") filed in the action on March 14, 1997. The Consent Order provided in relevant part that:

> all past, present and future drafts of the proposed Stipulation of Settlement and Order on Consent, or draft settlement agreements referred to by whatever name, and engineering reports, financial reports, attorney work product, and correspondence between counsel for the parties and participants prepared for the purpose of settlement discussions and negotiation in this case, shall be confidential and not disclosed by the parties or their attorneys, until such time as a settlement agreement has been tentatively agreed upon and the parties have agreed to disclose the proposed Stipulation of Settlement and Order on Consent for public discussion and final approval by the clients and relevant public bodies if any. Nothing in this Order shall prohibit the attorneys or the parties from public discussion of the settlement process and certain information that may be contained in portions of the draft settlement agreements so that the public and media may be kept informed about developments in the case.

(March 14, 1997 Order of Judge Kahn, A 45 *et seq.*).

■■■ We have jurisdiction of an appeal from an order which denies intervention. *Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 377, 107 S.Ct. 1177, 94 L.Ed.2d 389 (1987); *Brotherhood of R.R. Trainmen v. Baltimore & Ohio R.R.*, 331 U.S. 519, 524–525, 67 S.Ct. 1387, 91 L.Ed. 1646 (1947); *New York News, Inc. v. Kheel*, 972 F.2d 482, 485 (2d Cir.1992); 19 James Wm. Moore et al., Moore's Federal Practice § 202.11[3] (3d Ed.1998). Our review invokes the abuse of discretion standard. *United States v. Hooker Chemicals & Plastics Corp.*, 749 F.2d 968, 990–991 (2d Cir. 1984).

This litigation was commenced on September 2, 1988, when the United States of America, through the Environmental Protection Agency (the "EPA"), sued the Town of Mor-

---

1. Hon. Charles L. Brieant, Judge United States District Court for the Southern District of New York, and Hon. Sterling Johnson, Jr., Judge United States District Court for the Eastern District of New York, sitting by designation.

eau in Saratoga County, New York ("the Town"), for an order granting immediate access, pursuant to CERCLA § 104(e)(3), 42 U.S.C. §§ 9604(e)(3) & (5), and sued General Electric Company ("GE") for an order directing GE to proceed with the balance of a response action previously approved by the EPA pursuant to CERCLA § 106(a), 42 U.S.C. § 9606(a). The Town was also named as an indispensable party defendant in connection with the response action and the State of New York intervened as a plaintiff.

The litigation concerns the Caputo/Moreau landfill located in the Town. It is alleged that between 1958 and 1968, when portions of the landfill were used as an industrial waste disposal facility, and thereafter, high levels of trichloroethylene (TCE) and other pollutants found their way from the landfill into the underlying aquifer. GE has been designated as a potential responsible party.

By a decision on October 12, 1990, the district court (Judge Cholakis) vacated a consent decree between GE and the EPA and declined to approve the settlement represented thereby. *United States v. Town of Moreau*, 751 F.Supp. 1044 (N.D.N.Y.1990). Familiarity of the reader with that opinion is assumed.

Since 1990, when the district court rejected the proposed consent decree, the parties have disputed whether remedies selected by the EPA complied with the applicable federal and state requirements. The State of New York, appearing by the Attorney General, objected to the EPA's failure to require that a permanent public water supply be provided, not only to the present residents whose well water was contaminated with TCE, a carcinogen, but also to those areas of the Town where such contamination would prevent future construction from being served by individual wells drawn from the same aquifer. Providing a public water supply for that portion of the Town of Moreau adversely affected by the landfill may well require participation by or consent of the adjoining Town of Queensbury and the Saratoga Coun-

ty Water Authority, neither of which is a party to the litigation. Since 1990, the EPA, the Attorney General of New York, the Town and GE have been negotiating a complex, global settlement which would resolve all of the issues concerning the water supply and the remediation of the landfill site and the aquifer. All of the numerous engineering alternatives presently being considered by the parties are complex and expensive.

On March 14, 1997, there was a conference with the district court at which counsel for all parties to the record agreed that the public disclosure of draft settlement documents would endanger the settlement negotiations. They requested the court issue a confidentiality order on consent. Counsel relied on the general powers of the court to manage its caseload, and Local Rule 5.7 of The United States District Court for the Northern District of New York, which contains an express direction that pretrial and settlement statements provided to the Clerk of the District Court shall not be placed in the public file.[2] The District Court issued the Consent Order on March 14, 1997. (A 45 *et seq.*).

On February 21, 1997, the Post Star attempted to obtain access to the draft settlement documents by means of a state court Article 78 proceeding based on New York Public Officers Law Article 6 (Freedom of Information Law), §§ 84 *et seq.* ("FOIL"). The state court denied relief as barred by the Consent Order, and did not reach the issue of access under FOIL. Thereafter, the Post Star sought to intervene in this litigation solely for the purpose of vacating the Consent Order.

The court (Judge Kahn) denied the Post Star's motion for intervention, holding:

[T]he court finds that the presumption of public access to settlement conferences, settlement proposals, and settlement conference statements is very low or nonexistent under either constitutional or common law principles. Weighed against this pre-

---

2. Local Rule 5.7 reads as follows: "**5.7 Documents to be Provided to the Clerk** All pretrial and settlement conference statements shall be provided to the Clerk but not filed. These documents are not for public view." We have exam-

ined *in camera* the documents submitted to the Clerk pursuant to Local Rule 5.7 and find that they do not bear directly on the issues presented for our determination. The documents remain under seal.

sumption is the strong public policy which encourages the settlement of cases through a negotiated compromise. The instant litigation is quite complex and has been pending for nine years. It is a case which has a dire need of the opportunity to reach a negotiated end. Fortunately, it appears that the long negotiations that have preceded this order have begun to yield fruit. The parties should be encouraged in that pursuit. The proposed intervenors object to private negotiations on the ground that this will leave the public with a settlement to review that is a fait accompli. In a perfect world, the public would be kept abreast of all developments in the settlement discussions of lawsuits of public interest. In our world, such disclosure would, as discussed above, result in no settlement discussions and no settlements. The argument is thus well-meaning but misplaced.

After a careful consideration of the history of these proceedings, it is the Court's opinion that granting the relief sought by the intervenors, which would open all of the settlement negotiation processes to the public, would delay if not altogether prevent a negotiated settlement of this action. This finding alone warrants the denial of the motion.

(September 18, 1997 Memorandum–Decision & Order of Judge Kahn, at 20–21, A 342–343). We agree with the position taken by the district court that litigation to the ultimate end is a blunt instrument for the resolution of the complex problems presented by ordering a response to a CERCLA site, and that opening settlement negotiations in this case prior to the crafting of a tentative agreement would not be in the public interest, nor required by the Constitution or laws.

There is no question that fostering settlement is an important Article III function of the federal district courts. Every case must be dropped, settled or tried, and a principal function of a trial judge is to foster an atmosphere of open discussion among the parties' attorneys and representatives so that litiga-

tion may be settled promptly and fairly so as to avoid the uncertainty, expense and delay inherent in a trial.[3]

We have recognized that the trial judge "has the power to prevent access to settlement negotiations when necessary to encourage the amicable resolution of disputes." *City of Hartford v. Chase*, 942 F.2d 130, 135 (2d Cir.1991). We have recognized that a federal court may aid in crafting a settlement by enjoining the interference of others. *See, e.g., In re Baldwin–United Corp.*, 770 F.2d 328, 337–38 (2d Cir.1985) ("The existence of multiple and harassing actions by the states could only serve to frustrate the district court's efforts to craft a settlement.... Given the extensive involvement of the district court in settlement negotiations to date and in the management of this substantial class action, we perceive a major threat to the federal court's ability to manage and resolve the actions.").

Other federal courts have recognized that the district court may compel the parties, including corporate representatives, to attend a settlement conference, even where the corporation is represented by an attorney. *See e.g. G. Heileman Brewing Co., Inc. v. Joseph Oat Corp.*, 871 F.2d 648, 652 (7th Cir.1989) (en banc) ("[T]he action taken by the district court in this case constituted the proper use of inherent authority." (citing *Link v. Wabash R.R.*, 370 U.S. 626, 630–31, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962) (discussing the district courts' "inherent power ... to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."))); *Aguinda v. Texaco, Inc.*, 1994 WL 716025, *2 (S.D.N.Y. Dec.17, 1994) ("Federal courts have wide powers to require parties to consider settlement in good faith.").

In addition to recognizing that federal trial judges have an important role in settling cases, we have specifically endorsed the "larger role" of the court in the resolution through settlement of suits "affecting the public interest." *City of Hartford*, 942 F.2d at 136. Where a case is complex and expensive, and resolution of the case will benefit

---

**3.** In the district courts of this Circuit, only 2.9% of the civil cases terminated in the year ending September 30, 1997 reached trial. See Table C-

4A, 1997 Report of the Director, Administrative Office of the U.S. Courts.

the public, the public has a strong interest in settlement. The trial court must protect the public interest, as well as the interests of the parties, by encouraging the most fair and efficient resolution. This includes giving the parties ample opportunity to settle the case.

Judge Kahn, in issuing the Consent Order and in denying the proposed intervenors' motion, applied faithfully the criteria approved in *United States v. Amodeo*, 71 F.3d 1044 (2d Cir.1995) (*Amodeo II*). We review these criteria sequentially:

### 1. The Weight of the Presumption of Public Access

First, access to settlement discussions and documents has no value to those monitoring the exercise of Article III judicial power by the federal courts. The judge cannot act upon these discussions or documents until they are final, and the judge may not be privy to all of them. In addition, the settlement conference statements under Local Rule 5.7 of the United States District Court for the Northern District of New York are used to keep the judge apprised of the *parties'* independent progress toward settlement and are specifically "not for public view." These are not discussions or documents "presented to the court to invoke its powers or affect its decisions." *Amodeo II*, 71 F.3d at 1050. In this case, before any of the draft settlement documents can result in judicial ratification or rejection, there must be a proceeding in open court, and the document sought to be acted upon by the judicial power will be placed on file and must become a public record. The discussions and documents exchanged before an agreement has been reached in this case therefore play a "negligible role," *id.*, in the trial judge's exercise of Article III judicial power until they are merged into a tentative final agreement for court action, thereby becoming public.

■ Additionally, under state law, the Town cannot give its consent to any settlement agreement in final form, nor can it participate in a consent decree, without the affirmative vote of a majority of the members of the Town Board, taken at a public meet-

ing. *See generally* N.Y.Pub. Off. Law Article 7 (Open Meetings Law), §§ 100 *et seq.*. These state law provisions for public access to a Town Board's decision-making process do not extend to settlement discussions or draft documents prepared in aid of settlement. *See* N.Y.Pub. Off. L. § 105(1)(d) (allowing closed "discussions regarding proposed, pending or current litigation"); N.Y.Pub. Off. L. § 108(3) (exempting from open meeting requirement "any matter made confidential by federal or state law"); *Kline & Sons Inc. v. County of Hamilton*, 235 A.D.2d 44, 46, 663 N.Y.S.2d 339, 340 (3d Dept.1997) (holding confidentiality of executive sessions of county board specifically authorized by Open Meetings Law, thereby placing records of those sessions within Freedom of Information Law's (FOIL) exemption of records "specifically exempted from disclosure by state or federal statute"). Moreover, material prepared "solely with reference to the government's posture in [a] legal proceeding" is exempt from disclosure under FOIL. *Westchester Rockland Newspapers, Inc. v. Mosczydlowski*, 58 A.D.2d 234, 237, 396 N.Y.S.2d 857 (2d Dept.1977) ("Records prepared by the government solely with respect to its actual or contemplated status as a litigant are not records of governance and the public can have no greater right of access thereto than the party with whom the government is engaged in such litigation.") The settlement discussions and documents in this case do not carry a presumption of public access.

### 2. Countervailing Factors to be Balanced Against the Presumption of Access

"Once the weight of the presumption is determined, a court must balance competing considerations against it." *Amodeo II*, 71 F.3d at 1050. One consideration is whether release of the materials is likely to impair in a material way the performance of Article III functions.[4] Recognizing that fostering settlement of any case or controversy is an Article III function, and that courts have an even larger role in settling cases such as this affecting the public interest, we agree with the trial court that settlement negotiations in

---

4. Privacy interests, also a factor in *Amodeo II*, may or may not be implicated in this case.

this case would be chilled to the point of ineffectiveness if draft materials were to be made public.

Few cases would ever be settled if the press or public were in attendance at a settlement conference or privy to settlement proposals. A settlement conference is an opportunity for the parties, with the court acting as an impartial mediator, to have a frank discussion about the value of avoiding a trial. During these colloquies the parties are often called upon to evaluate both the strengths and weaknesses of their respective cases. As the district court in this case pointed out,

> At a minimum, the parties would be reticent to make any concessions at a settlement conference if they could expect that their statements would be published to the public at large.... Settlement positions are often extreme and should they be made public a litigant would reasonably fear being judged in the court of public opinion based upon what are nothing more than bargaining positions. These concerns would hardly encourage negotiations. The present case, of interest to the public and the press, clearly presents the need for a private forum in which to explore settlement.

(September 18, 1997 Memorandum–Decision & Order of Judge Kahn, at 18, A 340). The public interest in settlement of this complex and expensive environmental clean-up case supports the trial court's decision to foster settlement and weighs heavily against the negligible to nonexistent presumption of access in this case.

We have previously recognized that settlement documents in draft form are not part of the public record of a federal case, that the district court may seal documents in order to foster settlement, and that the district court's power to seal documents "takes precedence over FOIA rules that would otherwise allow those documents to be disclosed." *City of Hartford*, 942 F.2d at 135–36.

We conclude that the presumption of access to settlement negotiations, draft agreements, and conference statements is negligible to nonexistent. We also conclude that release of these discussions and documents is likely to impair materially the trial court's performance of its Article III function of crafting a settlement of this case. The need for a fair and efficient resolution through settlement of this complex, expensive, ten-year-old case of great public importance far outweighs the negligible presumption of access to settlement materials.

We have considered all of the Post Star's contentions on this appeal and have found them without merit.

We affirm the order appealed from.