**In re WORLDCOM, INC. ERISA LITIGATION**

**This Document Relates to: ALL ACTIONS**

**No. 02 Civ. 4816(DLC).**

United States District Court, S.D. New York.

Oct. 13, 2004.

Lynn Lincoln Sarko, Gary A. Gotto, Keller, Rohrback, LLP, Seattle, WA, Jeffrey Lewis, Lewis & Feinberg, P.C., Oakland, California, Edwin J. Mills, Stull, Stull & Brody, New York, New York, for Lead Plaintiffs.

William J. Kilberg, Miguel A. Estrada, Paul Blankenstein, Gibson, Dunn & Crutcher LLP, Washington, D.C., for Defendant Merrill Lynch Trust Company FSB.

## OPINION

COTE, District Judge.

The plaintiffs in this ERISA class action seek approval of judgment reduction formulae and a concomitant bar order to be entered against, among others, two non-settling defendants, Merrill Lynch Trust

Co., FSB ("Merrill Lynch"), the trustee of the WorldCom, Inc. ("WorldCom") 401(K) Salary Saving Plan ("Plan"), and Scott Sullivan ("Sullivan"), WorldCom's former Chief Financial Officer. Merrill Lynch has entered a limited objection against the bar order. Sullivan, against whom the litigation is stayed, joins in this objection.

Merrill Lynch contends that the bar order is improper since it may not allow the amount of any judgment entered against it in this litigation to be reduced by the full amount of its right to contribution from defendants who have settled the litigation. The bar order here contemplates that the amount of any judgment reduction will be affected by a determination of the ability of the settling defendants to pay a judgment. As a consequence, in the case of a settling defendant whose financial means are limited and against whom Merrill Lynch has a right of contribution for the settling defendant's proportionate share of liability, Merrill Lynch may only have any judgment against it reduced by the amount it is determined the settling defendant is able to pay towards its proportionate share of the judgment. For the following reasons, the bar order is approved.

*Background*

On June 25, 2002, WorldCom announced a massive restatement of its financials. Soon thereafter, it entered bankruptcy. Lawsuits alleging violations of the federal securities laws and of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001 *et seq.*, surrounded and followed these events. The Judicial Panel on Multi–District Litigation has transferred the civil litigation concerning WorldCom pending in federal courts to this Court, where it has been consolidated into the *Securities Litigation* and the *ERISA Litigation.*

The *ERISA Litigation* is brought on behalf of all Plan participants for whose accounts the Plan held shares of World-Com stock at any time from "no later than" September 14, 1998 to "the present."[1] The *ERISA Litigation* plaintiffs chose this class period because they allege that certain defendants knew or should have known by at least September 1998 that investment in WorldCom stock under the Plan was "inappropriate or imprudent."

The consolidated class action complaint in the *ERISA Litigation* was filed on December 20, 2002. On January 29, 2003, plaintiffs' request for permission to file an amended consolidated complaint (the "Complaint") was granted. The motions to dismiss addressed to this pleading were granted in part on June 17, 2003. *See In re WorldCom, Inc.,* 263 F.Supp.2d 745 (S.D.N.Y.2003). The surviving claims were brought against WorldCom, Merrill Lynch, Sullivan, Bernard J. Ebbers ("Ebbers"), WorldCom's former President and Chief Executive Officer, and Dona Miller, WorldCom's former Employee Benefits Director, for breaches of fiduciary duty, including the duty of prudence, duty to

---

**1.** Beginning in 2000, the Plan absorbed several predecessor plans, including the MCI Communications Corporation ESOP and 401(k) Plan, the IDB Communications Group, Inc. 401(k) Savings and Retirement Plan, the Western Union International, Inc. 401(k) Plan for Collectively Bargained Employees, and the SkyTel Communications, Inc. Section 401(k) Employee Retirement Plan (together, the "Predecessor Plans"). The Plan is an "employee pension benefit plan" as defined by ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A). The Plan is also an "eligible individual account plan" as that term is defined in ERISA § 407(d)(3), 29 U.S.C. § 1107(d)(3), and a "qualified cash or deferred arrangement" as defined in I.R.C. § 401(k), 26 U.S.C. § 401(k). The extent to which participants in the Predecessor Plans are included in the *ERISA Litigation* class is described in *In re WorldCom, Inc. ERISA Litig.,* No. 02 Civ. 4816(DLC), 2004 WL 2004 WL 2211664 (S.D.N.Y. Oct.4, 2004).

provide complete and accurate information, and the duty to monitor. On July 25 and September 12, plaintiffs filed a second and third amended consolidated class action complaint ("Amended Complaint") which added additional defendants and re-pleaded claims against certain previously dismissed defendants.

Like the Complaint, the Amended Complaint seeks recovery for WorldCom employees who invested in WorldCom stock through the Plan and alleges violations of ERISA. The defendants named in the Amended Complaint are Ebbers, Sullivan, and Dennis W. Sickle, WorldCom's former Senior Vice President, Human Resources, as well as five employees, members of the WorldCom Board of Directors, Merrill Lynch, and WorldCom itself. WorldCom was the Plan Administrator.

As Plan Trustee, Merrill Lynch was required to invest the trust funds as directed by a Plan participant. As a "directed trustee," Merrill Lynch had no discretion to manage the Plan's assets, but was required by law to follow only "proper" directions from the Plan's Investment Advisor. *See In re WorldCom, Inc.*, 263 F.Supp.2d at 761. The plaintiffs allege that Merrill Lynch followed instructions to invest employee funds in WorldCom stock when a prudent trustee would have known that WorldCom's decision to continue to offer its own stock to its employees as an investment option was imprudent. *Id.* at 762.

On October 14, 2003, certain of the defendants moved to dismiss the claims against them in the Amended Complaint.[2]

Fact discovery in the *ERISA Litigation* closed on July 23, 2004. Meanwhile, on April 20, 2004, WorldCom emerged from bankruptcy as MCI, Inc. ("MCI").

On June 30, 2004, the named plaintiffs in the *ERISA Litigation* and all of the defendants except Merrill Lynch and Sullivan executed a settlement agreement ("Agreement"). The Agreement provides that at a Fairness Hearing, which has since been scheduled to be held on October 15, the Court will determine, *inter alia,* "whether to enter judgment finally approving the Settlement and entering a bar order satisfying all of the terms of Section 2.5 below (the 'Bar Order')." Agreement, § 2.3.3.

Section 2.5 of the Agreement contains the Bar Order, and includes a provision that gives the non-settling defendants a right to a reduction in the amount of any judgment entered against them. It requires the Court to approve the Bar Order as fair, including fair to the non-settling defendants. Agreement, § 2.5.1. It bars all claims against the Releasees, which includes the settling defendants, "for indemnity and/or contribution arising out of the ERISA Action and for any other Claims arising out of the Released Claims." Agreement, § 2.5.2.[3] It provides that

because the Barred Persons are barred from asserting any Barred Claims against the Releasees, and are barred from asserting any Barred Insurance Claims against any of the Underwriters, any judgments entered against the Barred Persons under the Amended Complaint in the ERISA Action will be reduced by the Judgment Reduction Amount.

---

2. These motions remain unaddressed at the request of the parties, who began serious settlement discussions during the briefing of the motions.

3. The Released Claims include claims for attorney's fees, litigation costs and "indemnification or any other type or nature of legal or equitable relief" asserted in the WorldCom bankruptcy proceeding or for indemnity or contribution with respect to any claims asserted in the *ERISA Litigation*. Agreement, § 3.2.

Agreement, § 2.5.4. The "Underwriters" are insurance companies that issued polices to WorldCom that are implicated by the claims in the *ERISA Litigation.* They are National Union Fire Insurance Company of Pittsburgh, Pa., Twin City Fire Insurance Company, Gulf Insurance Company, and Continental Casualty Company.

The dispute at issue here concerns the judgment reduction amount. Because of its importance to the discussion that follows, it is quoted in its entirety.

1.41 "Judgment Reduction Amount" shall mean, with respect to any Barred Person, an amount determined by the Court at the time of entry of any judgment against such Barred Person, equal to the greatest of (i) the "Settlement Credit", (ii) the "Contribution Credit;" (iii) the "Insurance Credit," or (iv) the "Indemnity Credit," with such terms having the following meanings:

1.41.1 *The "Settlement Credit" shall mean (a) $51,150,000* (constituting the aggregate of the Principal Class Settlement Amount, the Ebbers Initial Settlement Payment, and the face principal amount of the Ebbers Note), *unless the Court shall determine when assessing liability against the Barred Person that some portion of the damages claims settled in the Settlement are different from those for which the Barred Person is liable,* then (b) $51,150,00 minus the portion of the Class Settlement Amount determined by the Court to have been paid with respect to such different damage claims.

1.41.2 The "Insurance Credit" shall mean the amount of coverage, if any, the Court determines would have been available to such Barred Person under the Insurance Policies but for the operation of the Bar Order.

1.41.3 *The "Contribution Credit" shall mean an amount equal to the val-ue of the contribution or equitable indemnification claim, if any,* that the Court determines such Barred Person would be entitled to assert against one or more Settling Defendants but for operation of the Bar Order, which shall be equal to the aggregate proportionate shares of liability, if any, of the Settling Defendants as determined by the Court at the time of entry of any judgment against any Barred Person, *adjusted, as the Court determines is appropriate, to reflect any limitation on the financial capability of the Settling Defendants to pay their respective proportionate shares of liability to the Barred Person had the Barred Person obtained a contribution or equitable indemnification judgment against them in such amount;* provided that in determining the Contribution Credit with respect to the Company as a Settling Defendant, *the Court shall take into consideration whether the Barred Person would have held an allowed claim in the Bankruptcy Proceeding for contribution or equitable indemnification, and the amount, if any, the Barred Person would receive under the Plan of Reorganization on account thereof.*

1.41.4 *The "Indemnity Credit" shall mean an amount equal to the value of the contractual indemnity claim, if any, that the Court shall determine such Barred Person would be entitled to assert against the Settling Defendants but for operation of the Bar Order,* adjusted, as the Court determines is appropriate, to reflect any limitation on the financial capability of the Settling Defendants to pay the Barred Person any indemnity judgment against them; provided that in determining the Indemnity Credit with respect to the Company as a Settling Defendant, *the Court shall take into consideration whether the Barred Person would have held an allowed claim*

*in the Bankruptcy Proceeding for contractual indemnification and the amount, if any, that the holder of such an allowed claim would receive under the Plan of Reorganization on account thereof.*

Notwithstanding any other provision of this Settlement Agreement, if in connection with entry of the Bar Order the Court shall conclude that applicable law requires that the Judgment Reduction Amount be determined or calculated in a manner different from that set forth above in this Section 1.41, then *the Judgment Reduction Amount shall be determined and calculated as the Court shall conclude is required by applicable law,* and all Settling Parties shall consent to such determination and calculation of the Judgment Reduction Amount and to any modification to the form of the Final Order attached hereto as Exhibit 2.3.3 with respect to the Judgment Reduction Amount necessary to give effect to such conclusion by the Court; provided, however, that no Settling Party shall take the position that applicable law requires that the Judgment Reduction Amount be determined or calculated in a manner different from that set forth above in this Section 1.41.

Agreement, § 1.41 (emphasis supplied).

In response to Merrill Lynch's opposition to the Bar Order, the plaintiffs had agreed that Merrill Lynch may combine the Contribution Credit to which the Court concludes that Merrill Lynch is entitled with respect to settling defendants other than WorldCom with the Indemnity Credit. Merrill Lynch would therefore be entitled to the greatest of the Settlement Credit, the Insurance Credit, or the combined Contribution and Indemnity credits.

The Notice to the ERISA class estimated that the damages to the class were $150 to $600 million. The settlement with WorldCom and all of the individual defendants except for Sullivan provides for the payment of $47.15 million in cash to the class and a commitment by Ebbers to provide as much as an addition $4 million. The Underwriters are contributing up to $28 million, WorldCom/MCI is providing a minimum of $18.75 million, and Ebbers is contributing $400,000 in cash. Under WorldCom's Plan of Reorganization, the plaintiffs would be entitled to either no recovery at all from WorldCom if their claim is subordinated to the claims of all other creditors,[4] or to a recovery of a cash payment of approximately 17.85% of the amount of the claim, plus 7.14 shares of MCI, Inc. stock for every $1,000 in claims.

On January 23, 2003, Merrill Lynch filed a Proof of Claim in the WorldCom bankruptcy asserting a claim for contractual indemnification in connection with the *ERISA Litigation.* Merrill Lynch has no right to indemnification under the terms of the contract if it engaged in willful misconduct or gross negligence. As was true with the right of plaintiffs in the *ERISA Litigation* to recover from WorldCom, if the Merrill Lynch claim is subordinated, Merrill Lynch will receive no distribution. If it is treated as a general unsecured claim, Merrill Lynch will receive 17.85% of

---

4. Section 510(b) of the Bankruptcy Code provides, in pertinent part as follows:

For the purpose of distribution under this title, a claim arising from rescission of a purchase or sale of a security of the debtor . . ., for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under section 502 on account of such a claim, shall be subordinated to all claims or interest that are senior to or equal the claim the claim or interest represented by such security, except that if such security is common stock, such claim has the same priority as common stock.

11 U.S.C. § 510(b).

the allowed amount of the claim in cash, and 7.14 shares of MCI stock for each $1,000 in allowed amount of the claim. Merrill Lynch is insured for its liability and defense costs under a policy with a $500,000 deductible. On October 12, 2004, Merrill Lynch and the ERISA plaintiffs informed the Court that they had stipulated that Merrill Lynch's Indemnity Credit would be treated as a general unsecured claim with a value equal to the value of its contractual indemnification claim against WorldCom.

Merrill Lynch has one remaining objection to the scope of the Bar Order, and in particular to the judgment reduction formulae.[5] It objects to an adjustment to the contribution credit to reflect "any limitation on the financial capability of the Settling Defendants to pay their respective proportionate shares of liability." Agreement, § 1.41.3.[6]

*Discussion*

■■■■ A district court must review the terms of a class action settlement for "fairness, reasonableness and adequacy of the settlement to the plaintiff class." *In re Masters Mates & Pilots Pension v. Riley,* 957 F.2d 1020, 1025 (2d Cir.1992). When the rights of third parties are also at stake, it is necessary to consider the fairness of the terms of the settlement to them as well. *Id.* at 1026. *See also Gerber v. MTC*

*Electronic Technologies Co.,* 329 F.3d 297, 302 (2d Cir.2003). Where a judgment credit is given to a non-settling defendant in an amount equal to its proportionate share of liability, its rights "are protected even without a determination of the fairness of the settlement." *Gerber,* 329 F.3d at 303.

The importance of settlement to litigation, particularly complex litigation such as this one, is indisputable. *See, e.g., Gambale v. Deutsche Bank AG,* 377 F.3d 133, 143 (2d Cir.2004); *United States v. Glens Falls Newspapers, Inc.,* 160 F.3d 853 (2d Cir.1998).

> There is no question that fostering settlement is an important Article III function of the federal district courts.... [A] principal function of a trial judge is to foster an atmosphere of open discussion among the parties' attorneys and representatives so that litigation may be settled promptly and fairly so as to avoid the uncertainty, expense and delay inherent in trial.... Where a case is complex and expensive, and resolution of the case will benefit the public, the public has a strong interest in settlement. The trial court must protect the public interest, as well as the interests of the parties, by encouraging the most fair and efficient resolution. This includes

---

5. Merrill Lynch had initially made four objections. It had objected to the Bar Order extinguishing its right to contractual indemnification by WorldCom. It appears, however, from a submission of October 12, 2004, that this objection may be resolved by stipulation. Merrill Lynch had also objected to a perceived lack of mutuality in the Bar Order, but Section 2.5.6 of the Agreement bars the settling defendants from suing barred persons. Finally, Merrill Lynch had objected that it is entitled both to contractual indemnification and to equitable indemnification and contribution, not just to the one which gives it the greatest protection. This objection appears to

have been addressed by the plaintiffs, who have agreed to modify the Bar Order to permit Merrill Lynch to combine any contribution credit and any indemnity credit as to WorldCom to which the Court concludes Merrill Lynch is entitled.

6. It would appear that Merrill Lynch could make a similar argument regarding the parallel adjustment to the indemnification set-off, but Merrill Lynch did not do so in its moving papers. *See* Agreement, § 1.41.4. The analysis below applies with equal force to both provisions.

giving the parties ample opportunity to settle the case.

*Glens Falls Newspapers,* 160 F.3d at 856–57. "Because settlement amounts are based on rough estimates of liability, anticipated savings in litigation costs, and a host of other factors, they will rarely match exactly the amounts a trier of fact would have set." *McDermott v. AmClyde,* 511 U.S. 202, 219–20, 114 S.Ct. 1461, 128 L.Ed.2d 148 (1994).

■ ERISA imposes joint and several liability on defendants. *Masters Mates,* 957 F.2d at 1027; *Chemung Canal Trust Co. v. Sovran Bank/Maryland,* 939 F.2d 12, 16 (2d Cir.1991). As a consequence, "when two or more persons' torts together cause an injury, each tortfeasor is liable to the victim for the total damages." *Masters Mates,* 957 F.2d at 1027. Under this doctrine, a "tortfeasor is not relieved of liability for the entire harm he caused just because another's negligence was also a factor in effecting the injury." *Edmonds v. Compagnie Generale Transatlantique,* 443 U.S. 256, 259 n. 8, 99 S.Ct. 2753, 61 L.Ed.2d 521 (1979). For this reason, a plaintiff may satisfy an entire judgment against one of several tortfeasors. *Id.*

> Joint and several liability applies when there has been a judgment against multiple defendants. It can result in one defendant's paying more than its apportioned share of liability when the plaintiff's recovery from other defendants is limited by factors beyond the plaintiff's control, such as a defendant's insolvency. When the limitations on the plaintiff's recovery arise from outside forces, joint and several liability makes the other defendants, rather than an innocent plaintiff, responsible for the shortfall.

*McDermott,* 511 U.S. at 220, 114 S.Ct. 1461. *See Edmonds,* 443 U.S. at 271 n. 30, 99 S.Ct. 2753.

■ As a matter of fairness, however, joint tortfeasors do not have to shoulder the entire burden of a judgment alone where there are other solvent tortfeasors. *Masters Mates,* 957 F.2d at 1028. The law generally recognizes the right of contribution among joint tortfeasors. *Id.* Contribution is "a procedural device for equitably distributing responsibility for plaintiff's losses proportionally among those responsible for the losses, and without regard to which particular persons plaintiff chose to sue in the first instance." *Chemung,* 939 F.2d at 15–16. The right of contribution among joint tortfeasors has "no financial impact on the recovery of plaintiffs." *Id.* at 16.

■ Because of the importance of settlement to our litigation system, and because an unlimited right to seek contribution would "surely diminish the incentive to settle," *Masters Mates,* 957 F.2d at 1028, courts may approve provisions in settlement agreements that bar contribution and indemnification claims between the settling defendants and non-settling defendants so long as there is a provision that gives the non-settling defendants an appropriate right of set-off from any judgment imposed against them. *In re Ivan F. Boesky Sec. Litig.,* 948 F.2d 1358, 1368–69 (2d Cir.1991). Without the ability to limit the liability of settling defendants through bar orders "it is likely that no settlements could be reached." *Id.* at 1369. Nonetheless, "[a] settlement bar should not be approved unless it is narrowly tailored and preceded by a judicial determination that the settlement has been entered into in good faith and that no one has been set apart for unfair treatment." *Masters Mates,* 957 F.2d at 1031. A settlement bar may not be approved if it grants a non-settling defendant "a judgment reduction less than the amount paid by settling defendants toward damages for

which the non-settling defendant would be jointly and severally liable." *Id.* In assessing the fairness of a bar order, a court may weigh relative fault, the likelihood of a plaintiff's success at trial, and the adequacy of the resources of the most culpable party to ensure that "a settling defendant escapes neither the responsibility for his wrongdoing nor, therefore, the deterrent effect which underlies the right to contribution." *Id.* at 1032 (citation omitted).

■ A bar order may extinguish the right to indemnification. *Id.; Gerber,* 329 F.3d at 307; *Boesky,* 948 F.2d at 1368–69. There may even be instances in which a settlement may be approved without the identification of a specific judgment reduction provision. Where the settling defendants wish or require approval of a formula for judgment reduction, where there are only a few non-settling defendants, or where there is "a single set of facts," it may be practical and desirable to designate a formula at the time the settlement is reviewed for fairness. *Boesky,* 948 F.2d at 1369.

There are two principal judgment reduction formulae that have received recent approval by courts: the *pro tanto* method and the proportionate fault method.[7] The *pro tanto* rule allows the non-settling tortfeasor to use the money paid in settlement, dollar for dollar, as a credit against any judgment. The proportionate share rule reduces the amount of recovery for the plaintiffs against the non-settling tortfeasors by the amount of the proportional share of liability of the settling tortfeasors.

In *McDermott,* an admiralty case, the Court endorsed the proportionate share formula as the superior method. Three considerations were of particular importance to the Court in addressing the issue: the extent to which the formula was consistent with the substantive law in admiralty cases that fault among joint tortfeasors was to be assessed proportionately, the promotion of settlements, and the interest in judicial economy. *McDermott,* 511 U.S. at 211–12, 114 S.Ct. 1461. *See Bragger v. Trinity Capital Enterprise Corp.,* 30 F.3d 14, 17 (2d Cir.1994). As already noted, where a settlement bar awards a credit that "is at least the settling defendants' proven share of liability, the non-settling defendants' rights are protected even without a determination of the fairness of the settlement." *Gerber,* 329 F.3d at 303. Because the non-settling defendant knows that the settling defendants' wrongdoing is relevant, they can prepare their strategy for trial and have no right to know the precise amount of their judgment credit. *Id.* at 304–06. In *Gerber,* the Court of Appeals for the Second Circuit approved a bar order and judgment credit formula that allowed a non-settling defendant to receive credit of the greater of either the *pro tanto* or the proportionate share formula. *Id.* at 310.

The Court of Appeals for the Second Circuit has held that principles of proportional fault arising from the federal common law will be applied to ERISA actions. These include the right to indemnification and contribution among joint tortfeasors. *Masters Mates,* 957 F.2d at 1025.[8]

---

**7.** New York allows a non-settling joint tortfeasor to recover under either the *pro tanto* rule or the proportionate share rule, depending on which is more favorable to it. N.Y. Gen. Oblig. Law § 15–108 (McKinney 1989); *McDermott,* 511 U.S. at 209 n. 8, 114 S.Ct. 1461.

**8.** The plaintiffs contend that *Great–West v. Knudson,* 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002), has cast doubt on the continued validity of the holding in *Chemung,* 939 F.2d 12, that there is a right to contribution under ERISA.

Merrill Lynch objects to the adjustment to the proportionate share credit to reflect "any limitation on the financial capability of the Settling Defendants to pay." It argues that this provision shifts the risk of a bad settlement onto Merrill Lynch, is inconsistent with the Court's description of the proportionate share formula in *McDermott*, 511 U.S. at 221, 114 S.Ct. 1461, and at a minimum requires a hearing to determine the financial capabilities of the individual defendants. It acknowledges that WorldCom's financial capability is set out in its Plan of Reorganization.

The adjustment to the proportionate share formula to account for a settling defendant's penury is fair in the circumstances that exist here. It places Merrill Lynch in the same situation in which it would find itself if all of the defendants went to trial and some of its co-defendants were unable or not required by law to satisfy their proportionate shares of the judgment. In that event, the plaintiffs would be entitled to seek the difference from Merrill Lynch.

The settling defendants include individuals and WorldCom. WorldCom was thrown into bankruptcy by its financial tribulations and misconduct and has only recently emerged from bankruptcy. If the settling defendants do not have the financial resources to pay their proportionate share of their liability as of the time a judgment is entered against Merrill Lynch (or if WorldCom's financial liability to Merrill Lynch is restricted by its bankruptcy), and Merrill Lynch were able to reduce the judgment entered against it by the amount equivalent to their proportionate share of liability, then Merrill Lynch would receive a windfall. If, however, the individual defendants have the financial resources to pay their proportionate share of their liability as of that time, then Merrill Lynch is entitled to a credit for that amount and the plaintiffs will have suffered the consequences of any imprudent settlement. Similarly, if WorldCom's liability to Merrill Lynch for indemnification or contribution is equal to WorldCom's proportionate share of liability, then Merrill Lynch is entitled to a credit for that entire amount and plaintiffs will be unable to recover anything from Merrill Lynch that reflects any difference between the amount WorldCom paid in settlement and its proportionate share of liability for the damages awarded at trial. What should not happen here is endorsement of a formula that relieves a joint tortfeasor of its obligation to pay the outstanding judgment simply because it is the only well-heeled or solvent defendant and the plaintiffs chose to settle with the more financially-strapped defendants. Merrill Lynch is not entitled to be in a better position simply because the plaintiffs chose to settle with the poorer defendants prior to trial.

Merrill Lynch relies particularly on two passages from *McDermott* to support its argument that a settling defendant's financial resources must be irrelevant to the bar order analysis.[9] They are as follows:

It seems probable that in most cases in which there is a partial settlement, the plaintiff is more apt to accept *less* than the proportionate share that the jury might later assess against the settling defendant, because of the uncertainty of recovery at the time of settlement negotiations and because the first settlement normally improves the plaintiff's litigat-

---

9. Merrill Lynch also relies on an unpublished opinion in *Lundquist v. United States*, 116 F.3d 1486, 1997 WL 355933 (9th Cir.1997), which under the Ninth Circuit rules, is "not binding precedent" except for purposes of issue preclusion and may not be cited within the circuit except in limited circumstances. United States Court of Appeals for the Ninth Circuit Rule 36–3. Given these limitations, *Lundquist* will not be discussed further.

ing posture against the nonsettlors. In such cases, the entire burden of applying a proportionate share rule would rest on the plaintiff, and the interest in avoiding overcompensation would be absent. . . .

Unlike the rule in *Edmonds*, 443 U.S. 256, 99 S.Ct. 2753,[10] the proportionate share rule announced in this opinion applies when there has been a settlement. In such cases, the plaintiff's recovery against the settling defendant has been limited not by outside forces, but by its own agreement to settle. There is no reason to allocate any shortfall to the other defendants, who were not parties to the settlement. Just as the other defendants are not entitled to a reduction in liability when the plaintiff negotiates a generous settlement, so they are not required to shoulder disproportionate liability when the plaintiff negotiates a meager one.

*McDermott*, 511 U.S. at 219, 221, 114 S.Ct. 1461 (citation omitted) (emphasis in original).

*McDermott* gave several reasons for endorsing the proportionate share rule despite its prior decision in *Edmonds* in which it refused to do so. Nothing in the two passages from *McDermott* on which Merrill Lynch relies so heavily addresses the scenario posed here: the very real possibility that one or more of the settling defendants would not be able to pay their proportionate share of any liability imposed at trial. The Court had no reason to consider this scenario in *McDermott*.

*McDermott* emphasized in several passages, including the latter passage just quoted, that "outside forces," which it defined to include a "defendant's insolvency," could result in a defendant paying more

than its apportioned share of liability since "an innocent plaintiff" should not be responsible for the shortfall. *Id.* at 221, 114 S.Ct. 1461. As *McDermott* explains, there is no tension between the proportionate share rule it endorses and the principles of joint and several liability. *Id.* at 220–21, 114 S.Ct. 1461. And there is none in the Bar Order. If the plaintiffs have settled with defendants for less than they are financially able or required to pay, then the plaintiffs will bear the burden of that difference. If, however, the settling defendants have paid all that they can or should, then the doctrine of joint and several liability makes the remaining defendants liable for the difference.

One final observation is in order. Merrill Lynch's position, if adopted, would have perverse consequences. There would be no incentive to settle with defendants of limited means prior to trial, since their inability to pay their proportionate share of liability could not be considered in any judgment reduction formula, and could only be considered when a judgment following trial had been entered against them. The strong policy favoring settlements would be seriously undermined by such a rule with enormous costs to litigants and the court system. The only beneficiary from such a rule would be a deep pocket tortfeasor, and its benefit would be receipt of a windfall to which it would not otherwise be entitled. Reflecting these considerations the recently issued Restatement (Third) of Torts on the liability of multiple tortfeasors advises that a

nonsettling jointly and severally liable defendant should be credited the amount of assets or liability that the court found

---

**10.** In *Edmonds*, 443 U.S. 256, 99 S.Ct. 2753, the Court refused to reduce the judgment against a shipowner by the proportionate

fault attributed to a stevedore whose liability was limited by statute. *McDermott*, 511 U.S. at 220, 114 S.Ct. 1461.

the partially insolvent or immune settling tortfeasor had available to satisfy a judgment against it or the percentage of comparative responsibility assigned to the settling tortfeasor, *whichever is less.*

Restatement (Third) of Torts: Effect of Partial Settlement on Jointly and Severally Liable Tortfeasors' Liability § 16 cmt. g (2000) (emphasis supplied).

Merrill Lynch has requested a hearing on the individual settling defendants' financial resources. There is no need to hold such a hearing at this moment in time. The relevant time for the measurement is the time, if ever, when judgment is entered against Merrill Lynch. Any determination now would have little relevance to that measurement. Merrill Lynch has the information that it needs to shape its trial strategy.

*Conclusion*

Merrill Lynch's objection to the entry of the Bar Order contained in the partial settlement in this action and to the related judgment credit formulae is denied.

SO ORDERED.