# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3765

_____

| | | |
|---|---|---|
| Comcast of Illinois X, An Illinois Limited Liability Company, | * * * | |
| Plaintiff - Appellee, | * * | |
| v. | * * | Appeal from the United States District Court for the District of |
| Multi-Vision Electronics, Inc., a dissolved Nebraska corporation doing business as Cable Network Company, also known as Cable Network; Ronald J. Abboud, Individually, | * * * * * * | Nebraska. |
| Defendants - Appellants. | * | |

_____

Submitted: May 14, 2007
Filed: June 29, 2007 (Corrected: 07/03/2007)

_____

Before MURPHY, HANSEN, and COLLOTON, Circuit Judges.

_____

MURPHY, Circuit Judge.

Comcast of Illinois initiated this action against Multivision Electronics[1] and its sole officer and shareholder, Ronald J. Abboud, alleging that they had violated the Cable Communications Policy Act and injured Comcast by illegally distributing cable

---

[1]The official caption refers to this appellant as Multi-Vision, but the parties and most of the record use Multivision as will we.

descramblers.  The district court[2] granted Comcast's motion for summary judgment. After a hearing on damages, it awarded Comcast $2,188,115 in damages for which Multivision and Abboud were held to be jointly and severally liable.  They appeal, arguing that the district court erred by granting summary judgment to Comcast, abused its discretion in awarding damages and denying a continuance, and should not have imposed individual liability on Abboud.  We affirm.

I.

Comcast owns and operates a cable television system and provides cable services to paying subscribers.  The system's signals are transmitted from their point of origin to Comcast's reception facilities and then retransmitted to subscribers' homes through Comcast's cable network.  To prevent subscribers from receiving services they have not paid for, Comcast encodes or "scrambles" its signals.  A subscriber must have a converter box or "descrambler" connected to a television in order to receive the transmitted signals, because scrambled signals are not viewable.  As part of its service, Comcast offers its subscribers a descrambler for which they pay a small rental fee. Comcast's cable system is "addressable," meaning that Comcast programs each subscriber's converter to receive only purchased services.  It is possible, however, for an individual to circumvent Comcast's encoding system by installing an unauthorized descrambler which decodes the signals and receives programming the individual has not purchased.

In February 2003 Comcast began to investigate the cable descrambler sales of Platinum Electronics, Inc. and Steven Abboud (Ronald Abboud's brother) and shortly thereafter initiated an action against them alleging illegal distribution of cable descramblers.  In June 2003 while that litigation was ongoing, federal marshals raided

_____

[2]The Honorable Joseph F. Bataillon, Chief Judge, United States District Court for the District of Nebraska.

the offices of Platinum Electronics in Omaha. Some of the documents seized during this raid related to sales of cable descramblers by Multivision, which had operated from the same location as Platinum Electronics.[3]

Based on the information contained in the seized documents, Comcast commenced this action against Multivision and Ronald Abboud. The complaint alleged that the defendants' distribution of cable descramblers between 1991 and 1999 violated the Cable Communications Policy Act, 47 U.S.C. § 553(a)(1), which provides that no one "shall intercept or receive or assist in intercepting or receiving any communication service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." Assisting in interception includes "the manufacture or distribution of equipment intended by the manufacturer or distributor . . . for unauthorized reception" of cable services. Id. § 553(a)(2). Comcast alleged that by selling cable descramblers the defendants had assisted in the unauthorized interception of cable services.

Evidence was presented to the district court relating to Multivision's sales of cable descramblers. It is not disputed that the descramblers sold by appellants are capable of decoding cable television signals or that Comcast had not authorized any identified customer to use a descrambler sold by Multivision. The descramblers Multivision sold typically cost customers well over $100, and at least three models cost $318. Invoices for the descramblers included a statement reading, "Do not hook up your descrambler until you have received authorization from your cable company or local officials. By opening and hooking up this equipment you agree to be fully responsible for using this equipment in a legal manner." Multivision also gave a return form to purchasers of cable descramblers. Customers could fill it out and give it to Multivision to identify the specific problem they were having with a descrambler. The form provided check boxes, three of which were labeled "premium stations are

_____

[3]Multivision was dissolved for nonpayment of taxes on April 19, 1999.

-3-

scrambled," "basic stations are scrambled," and "some premium stations come in, others do not."

Comcast also found a classified advertisement Multivision had placed in Nuts & Volts magazine in February, March, and April 1993, stating that it sold cable descramblers. Richard Killian, an investigator for Comcast, found Multivision listed along with other distributors of cable descrambling equipment on a Swedish website under the heading "Cable Descrambler Ordering List." Two of the other listed distributors (Modern Electronics and TKA Electronics) have been sued in Nebraska for illegal distribution of cable descrambling equipment, and we recently affirmed a grant of summary judgment against TKA Electronics in an unpublished opinion. Comcast of Ill. X, L.L.C. v. TKA Elecs., Inc., 211 F. App'x 536 (8th Cir. 2007).

Both sides filed motions for summary judgment. Comcast argued that there was no genuine issue of fact as to whether the defendants intended to help their customers illegally obtain cable programming. Multivision and Abboud argued that a 1994 decision of the Nebraska Supreme Court involving Abboud and the distribution of cable descramblers, Imperial Empire Trading Corp. v. City of Omaha, 524 N.W.2d 314 (Neb. 1994), put Comcast on notice of the defendants' activities in 1994. Claiming that a three year statute of limitations governs actions under 47 U.S.C. § 553, the defendants argued that the action was time barred because Comcast did not sue until 2003.

The district court granted Comcast's summary judgment motion and denied that of the defendants. It concluded that Comcast's action was not barred by the statute of limitations because there was nothing to put Comcast on notice of the defendants' actions before February 2003. It further concluded that there was no genuine issue of fact as to whether the defendants intended to assist their customers in illegally intercepting cable television because the defendants were involved in distributing cable descramblers, whose only intended use was the unauthorized reception of cable

services. It also held that the disclaimers included with the invoices were insufficient to shield the defendants from liability.

The district court initially set a hearing on damages for October 13, 2005. On October 4 defendants moved for a continuance based on an affidavit averring that Ronald Abboud had admitted himself to a "health rehabilitation facility" outside Nebraska for treatment three days before, that he would be unavailable on October 13, and that his treatment would last for 28 days or possibly longer. The court granted a continuance to November 21, 2005. At the November 21 hearing neither Abboud nor any of the defendants' witnesses were present. Based on a letter written by Abboud's psychotherapist, counsel for defendants requested a further continuance. After the district court denied the oral motion, the hearing proceeded. Comcast submitted defendants' tax returns for the years 1992 through 1997 as evidence of defendants' gross revenues and requested damages equal to the gross revenue reported on the tax returns ($8,555,246).

On September 28, 2006, the district court awarded Comcast damages. To find the amount of actual damages, it accepted the amount of gross revenue reported on Multivision's tax returns, rejected the deductions defendants had claimed on them, and deducted 75% from defendants' gross profits to reach $2,138,115, the actual damages awarded. The statute authorizes a district court to increase damages by up to $50,000 if it finds that a violation was committed willfully and for purposes of commercial advantage or private financial gain. See 47 U.S.C. § 553(c)(3)(B). The court found that defendants' violations met these requirements and added $50,000 for a total award of $2,188,115. It also found that plaintiff was entitled to recover reasonable attorney fees in the amount of $26,315 and ordered judgment entered in the total amount of $2,214,430. Ronald Abboud and Multivision were made jointly and severally liable for the judgment.

Abboud and Multivision appeal the summary judgment and the award of damages. In their view summary judgment was inappropriate not only because Comcast's claims are barred by the statute of limitations, but also because there is a dispute of material fact as to whether Abboud and Multivision intended the descramblers to be used for the unauthorized reception of cable programming. They further assert that the district court abused its discretion by denying their second motion for a continuance. The award of damages was itself an abuse of discretion they say, because Comcast failed to meet its burden of proving the amount of their profits, and the district court erred by finding the violation willful and Abboud personally liable.

Comcast responds that the issuance of the Imperial Empire decision and its availability in the public record was insufficient to put it on notice of appellants' activities, that the evidence of their intent and willfulness is overwhelming, and that there was sufficient basis to impose personal liability against Abboud. It also argues that the denial of a continuance did not cause appellants any prejudice and that the court's award of damages is supported by the evidence.

II.

Appellants contend that the district court erred by granting summary judgment to Comcast. They argue first that the statute of limitations barred Comcast's claims, asserting that because the 1994 decision of the Nebraska Supreme Court in Imperial Empire Trading was in the public record and involved the sale of cable descramblers by a company which Ronald Abboud owned, Comcast was put on notice of appellants' actions in 1994. Appellants claim that Comcast should have been aware of the case and under an obligation to investigate. Such an investigation would have revealed that the Imperial Empire Trading company was owned by Ronald Abboud, that Ronald Abboud also owned Multivision, and that Multivision was engaged in the allegedly unlawful practices for which Comcast seeks relief in this case. Comcast responds that

-6-

merely because <u>Imperial Empire</u> was in the public record beginning in 1994, that does not mean it should have been aware of it.  We review a grant of summary judgment de novo, using the same standard as the district court and construing the facts in the light most favorable to the nonmoving parties.  <u>Iowa Network Servs., Inc. v. Qwest Corp.</u>, 466 F.3d 1091, 1094 (8th Cir. 2006).  Summary judgment is appropriate only if the evidence establishes that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  <u>Id.</u>

The parties have proceeded on the assumption that the timeliness of this suit is governed by a three year statute of limitations borrowed from the Copyright Act, 17 U.S.C. § 507(b).  The Cable Communications Policy Act lacks its own statute of limitations and courts are in disagreement on the applicable statute.  <u>Compare</u> <u>Prostar v. Massachi</u>, 239 F.3d 669, 677-78 (5th Cir. 2001) (borrowing three year limitation from Copyright Act), <u>with</u> <u>Kingvision Pay-Per-View, Corp. v. 898 Belmont, Inc.</u>, 366 F.3d 217, 223-25 (3d Cir. 2004) (borrowing two year limitation from state antipiracy statute).  We assume without deciding that the three year limitation applies.  In this case we need not choose between the federal copyright law or state law because Nebraska's antipiracy statute, Neb. Rev. Stat. § 28-515.01, has a limitations period of eighteen months and we conclude that Comcast should have first been aware of appellants' activities in February 2003, six months before the complaint was filed on August 8, 2003.

In <u>Imperial Empire</u>, the case on which appellants rely for their statute of limitations argument, a former employee of the company which appellants claim was owned by Ronald Abboud,[4] notified Omaha police that Imperial possessed illegal cable descramblers which it had been selling.  The police obtained a warrant and seized the property.  Imperial was charged with theft of services and moved to

---

[4]The Nebraska Supreme Court's published decision in that case does not mention Abboud or state that he owned Imperial Empire Trading.

suppress the seized property. The motion was granted and the charges later dismissed. Meanwhile, the police had decided that the property was contraband and destroyed it without obtaining court approval. Imperial sued Omaha for conversion and wrongful destruction of property, and the district court held the city liable. Since no lawful market was found to exist for the destroyed property, it awarded only nominal damages. On appeal the Nebraska Supreme Court concluded that "the district court's factual determination that no lawful market existed was clearly wrong," 524 N.W.2d at 315, and remanded for further proceedings.

In federal question cases, the discovery rule applies "in the absence of a contrary directive from Congress." Union Pac. R.R. Co. v. Beckham, 138 F.3d 325, 330 (8th Cir. 1998). Under this rule, a cause of action accrues and the statute of limitations begins to run when the plaintiff discovers, or with due diligence should have discovered, the injury which is the basis of the litigation. See id. The pertinent issue here is whether the publication of the Imperial Empire decision would have led a reasonable person in Comcast's position to investigate the possibility that its rights were being violated. See CSC Holdings, Inc. v. Redisi, 309 F.3d 988, 992 (7th Cir. 2002).

Imperial Empire did not suggest that Comcast's services were being used without authorization, and Comcast is not mentioned. The only cable service provider mentioned in the opinion is Cox Cable Omaha. Appellants assert that because Comcast later purchased Cox, Comcast should have investigated further when it bought Cox. Appellants have not pointed to anything in the record on appeal which contains information about any transaction between Comcast and Cox or that Imperial Empire applied in any way to Comcast. We conclude that issuance of the Imperial Empire decision was not enough to put Comcast on notice that its own rights were being violated. Because appellants do not argue that anything other than Imperial

<u>Empire</u> could have caused Comcast's claim to accrue before February 2003,[5] we conclude that Comcast's action is not time barred.

Appellants next argue that the district court erred in concluding that there was no genuine issue of fact as to whether they possessed the requisite intent. They contend that simply because the descramblers were capable of illegal use does not demonstrate that they were intended to be used in this way. The cases on which Comcast relies are distinguishable say appellants, because in them the district court was either acting as a trier or fact or examining the likelihood of success on the merits. Nor are the disclaimers evidence of their unlawful intent, for a reasonable jury could find that the descramblers were intended to be used legally. They point to evidence of legitimate uses for the converter boxes and the finding in <u>Imperial Empire</u> that a lawful market existed for the descramblers. Comcast counters that cable customers had no reason to purchase a descrambler from appellants except for illegal uses, and that appellants were aware of this fact. It also asserts that the disclaimers were clearly intended to shield appellants from liability and as such are evidence of unlawful intent. Finally, it contends that <u>Imperial Empire</u> is readily distinguishable from the present case and the district court did not err by declining to defer to it.

Intent has traditionally meant not only desire to bring about the consequences of an act, but also knowledge that certain consequences are substantially certain to result from it. <u>See</u> Restatement (Second) of Torts § 8A cmt. b (1965); William L. Prosser, The Law of Torts § 8 at 31-32 (4th ed. 1971); <u>see also, e.g.</u>, <u>First Nat'l Bank of Omaha v. Acceptance Ins. Cos.</u>, 675 N.W.2d 689, 704 (Neb. Ct. App. 2004); <u>Bradley v. Am. Smelting & Ref. Co.</u>, 709 P.2d 782, 785-86 (Wash. 1985). If there was no genuine issue of fact as to whether appellants knew that it was substantially certain that their sales of cable descramblers would result in the unauthorized

_____

[5]We reject a brief suggestion that three small advertisements in the classified section of an electronics hobby magazine should have put Comcast on notice of appellants' activities.

interception of cable services, the district court's grant of summary judgment should be affirmed.

Because it is undisputed that Comcast's subscribers were able to rent a cable descrambler from Comcast for substantially less than the cost to purchase a comparable product from Multivision, there is little reason a paying customer would spend a considerable sum of money to purchase Multivision's product. See Intermedia Partners Se., G.P. v. QB Distribs. L.L.C., 999 F. Supp. 1274, 1281 (D. Minn. 1998); Time Warner Cable of N.Y. City v. Cable Box Wholesalers, Inc., 920 F. Supp. 1048, 1053 (D. Ariz. 1996). At oral argument counsel for appellants suggested that a customer might wish to purchase a descrambler with a remote volume control or channel changing feature or might want an additional device for another television in the home. Appellants urge us to infer that customers would pay hundreds of dollars for better volume control or channel changing capability but that would be mere speculation on this record. See Twymon v. Wells Fargo & Co., 462 F.3d 925, 934 (8th Cir. 2006).

On the return form appellants gave purchasers, three of the check boxes describing problems a customer might experience are labeled "premium stations are scrambled," "basic stations are scrambled," and "some premium stations come in, others do not." If Multivision gave the form to its customers for them to report a defective product, it would not likely expect a customer to complain only that *some* stations were scrambled and others were not. If the customer simply had not obtained Comcast's permission to use an additional cable converter, the customer would be expected to speak to Comcast rather than to Multivision. The fact that appellants had a preprinted return form to allow customers to complain about scrambled stations suggests they knew with substantial certainty that their customers were using the products to intercept cable programming illegally.

Disclaimers on cable converters are not necessarily evidence of intent, but they also cannot by themselves provide a defense to Comcast's claims.  See Intermedia Partners, 999 F. Supp. at 1282; Cable Box Wholesalers, 920 F. Supp. at 1053; Time Warner Cable of N.Y. City v. Freedom Elecs., Inc., 897 F. Supp. 1454, 1459 (S.D. Fla. 1995); Subscription Television of Greater Wash. v. Kaufmann, 606 F. Supp. 1540, 1542-43 (D.D.C. 1985).  Moreover, the fact that the descramblers conceivably had some legal uses does not negate the strong evidence of intent.  See Cont'l Cablevision, Inc. v. Poll, 124 F.3d 1044, 1048 (9th Cir. 1997).

Finally, appellants argue that the district court erroneously ignored Imperial Empire where the Nebraska Supreme Court reversed the trial court for its factual findings, which it found clearly erroneous.  See 524 N.W.2d at 315-16.  Appellants have produced no evidence to show that the facts here are similar to those in Imperial Empire, and have cited no authority for the proposition that we must follow the factual findings of a state court in this situation.  We conclude that the district court did not err by granting summary judgment to Comcast.

III.

Appellants argue that the district court abused its discretion when it denied their renewed motion for a continuance at the November 21, 2005 damages hearing.  They argue that they had been diligent in following the district court's deadlines and made no other requests for continuance, that the basis of the motion should not have come as an unfair surprise to Comcast, that given the delay in filing this action, any further delay would not have been prejudicial, and the health of Abboud was a compelling reason for continuance.  They also rely heavily on a Third Circuit decision, Gaspar v. Kassm, 493 F.2d 964 (3d Cir. 1974).  Comcast contends that the district court's denial of a continuance did not prejudice appellants.

In order for the denial of a continuance to be grounds for reversal, appellants must show that they were prejudiced as a result. United States v. Cotroneo, 89 F.3d 510, 514 (8th Cir. 1996), citing Souder v. Owens-Corning Fiberglas Corp., 939 F.2d 647, 651 (8th Cir. 1991). Here, appellants have failed to articulate why Abboud's absence from the hearing on damages deprived them of an opportunity to present evidence in their defense. They do not say what evidence Abboud intended to introduce through oral testimony if he had been present.[6] Their reliance on Gaspar v. Kassm is misplaced. There, the Third Circuit reversed a district court for denying a motion to continue, but that ruling was based on the fact that Kassm's eyewitness testimony was "necessary for the defense of his case," 493 F.2d at 969, and his being "gravely prejudiced by the fact that he was not present." Id. at 968. Because appellants have not explained why Abboud's testimony was necessary, they have not shown they were prejudiced by the denial of a continuance.

Appellants also contend that the way in which the district court calculated actual damages was erroneous. They argue that the tax returns submitted by Comcast demonstrated Multivision's gross revenues as a whole, not the revenue from the sale of cable descramblers. Only the latter kind of revenue is recoverable under the Cable Communications Policy Act they urge. In addition, they believe that the district court arbitrarily ignored the deductions Multivision claimed on its tax returns while accepting the gross income reported there and that the district court's own deductions were capricious guesswork. Comcast asserts that appellants have the burden of proving the deductions were justified, and that the district court's deductions were reasonable under the circumstances. We review the district court's calculation of damages for an abuse of discretion. Lester E. Cox Med. Ctr. v. Huntsman, 408 F.3d 989, 993 (8th Cir. 2005).

---

[6]Appellants' other witnesses, who presumably could have presented evidence on damages, also did not appear at the hearing. We do not understand appellants to argue that the district court should have continued the hearing due to their absence.

Under the Cable Communications Policy Act, Comcast bore the burden of proof to demonstrate the amount of Multivision's gross revenue, but appellants bore the burden to prove Multivision's deductions were justified. See 47 U.S.C. § 553(c)(3)(A)(i) (actual damages provision). The statute also specifically provides that "the party aggrieved shall be required to prove only the violator's gross revenue." Id. Thus, appellants are incorrect to assert that Comcast was required to separate the revenue Multivision gained by selling cable descramblers from the rest of Multivision's income. The statute's plain language only requires Comcast to show Multivision's "gross revenue," its income as a whole.

The district court was entitled to find that by submitting Multivision's tax returns as evidence of gross revenue, Comcast sustained its burden on that issue. Taxpayers have an incentive to report a low figure for gross income in order for their taxable income to be correspondingly lower. The district court also reasonably rejected the deductions Multivision claimed on its tax returns since a taxpayer has an incentive to report excessively high figures for deductions. Multivision submitted no evidence justifying those deductions besides the returns themselves. The district court was within its discretion to find that the claimed deductions left Multivision with an implausibly low amount of taxable income over five years ($100,754 or 1.2% of reported gross income). The deductions which the district court made were estimates, but that does not make the award an abuse of discretion.

Damages "may not be determined by mere speculation or guess," but they may be subject to "just and reasonable inference, although the result be only approximate." Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 563 (1931); see also Bigelow v. RKO Radio Pictures, Inc., 327 U.S. 251, 264 (1946) ("just and reasonable estimate" approved). Once liability has been established, "the risk of uncertainty in calculating damages falls upon the wrongdoer." Yonkers Branch – NAACP v. City of Yonkers, 251 F.3d 31, 40 (2d Cir. 2001). The district court stated that overhead costs of 15% to 25% of gross receipts are ordinarily deemed reasonable,

as is a deduction of 60% for the cost of goods. Because appellants failed to submit any evidence besides the tax returns, the district court used the 15% figure for overhead, added that to its cost of goods deduction, and so deducted 75% of Multivision's gross income. Appellants have not presented any evidence that a deduction of 75% is extraordinary, and we cannot say that such a deduction was unjust and unreasonable. Thus, we conclude that the district court did not abuse its discretion and affirm its award of actual damages.

Appellants also argue that the district court erroneously enhanced the award of damages pursuant to 47 U.S.C. § 553(c)(3)(C), which permits a court "in its discretion" to increase the damages award by not more than $50,000 if it "finds that the violation was committed willfully and for purposes of commercial advantage or private financial gain." They argue that there was insufficient evidence to support a finding of willfulness. Willfulness is "disregard for the governing statute and an indifference to its requirements." Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 127 (1985). For the purpose of enhancing damages, the district court was entitled to infer from Abboud's knowledge of the cable industry and the presence of disclaimers on the converter boxes, that the appellants were aware of the statute's prohibitions but nevertheless sold the boxes to customers who they knew would steal cable services. Such actions showed reckless disregard of the statutory requirements. See Cable/Home Commc'n Corp. v. Network Prods., Inc., 902 F.2d 829, 851-52 (11th Cir. 1990) (applying identically phrased provision in Communications Act). We conclude that the enhancement of damages was not an abuse of discretion.

Finally, Abboud asserts that the Cable Communications Policy Act requires a plaintiff to demonstrate that a defendant personally participated in a violation of the Act before individual liability may be imposed, and that the undisputed evidence demonstrates that he did not manufacture, sell, or distribute the descramblers. Abboud was Multivision's only corporate officer and its sole owner, however. His deposition testimony demonstrates that he knew of the uses and features of the cable boxes

Multivision sold, was intimately familiar with how cable services function, and was involved in setting company policy.  Because the record shows no distinction between Abboud's actions and Multivision's, the district court did not err in making Abboud personally liable for the judgment.  See CSC Holdings, Inc. v. J.R.C. Prods., Inc., 78 F. Supp. 2d 794, 801 (N.D. Ill. 1999), rev'd on other grounds, 309 F.3d 988 (7th Cir. 2002).

## IV.

Accordingly, we affirm the judgment of the district court.

_____